[Civ. No. 21243.   Second Dist., Div. Two.   July 10, 1956.]

CITY OF LONG BEACH, Plaintiff and Appellant, v. CLYDE ALLEN, Defendant; WALTER F. HACKER et al., Defendants and Appellants; OWEN M. MURPHY et al., Respondents.

Walhfred Jacobson, City Attorney, and Clifford E. Hayes, Deputy City Attorney, for Plaintiff and Appellant.

Kenneth Sperry for Defendants and Appellants and for Respondents.

FOX, J.—These appeals involve the application of the pension plan for policemen and firemen and their dependents under the charter of the city of Long Beach.

THE APPEALS OF HACKER AND WILLIAMS

Walter F. Hacker was appointed a patrolman in the Long Beach Police Department in January, 1923, and continued in that position until December, 1927, when he was appointed property clerk. He served in that capacity until his retirement in November, 1943. Subsequent to his retirement the position of property clerk has remained unfilled and the duties formerly carried out by him have been performed at various times by either a sergeant or patrolman or a lieutenant of police, who, upon occasion, performed additional duties—notably preparation of the police department budget. Hacker contends he is entitled to a pension based on the salary of the employee now performing the duties of property clerk.

Joseph R. Williams was appointed a draftsman in the fire department and continued to serve in that position until he retired in May, 1951. Subsequent to his retirement, the position of draftsman in the fire department has remained unfilled and all drafting is now centralized in the engineering department of the city. Williams contends his pension should be based on the current salary fixed for the position of draftsman in the engineering department.

The trial court held against the contentions of both of these men. Each has appealed. We have concluded the judgment as to them must be affirmed.

The pension rights of Hacker and Williams stem from the provisions of section 187(2) of the Long Beach charter which provides for a pension for retired employees of the police and fire departments based on the applicable percentages of the "annual salary of the rank or position held by him one year prior to the date of retirement. . . ." This has been construed as creating "a fluctuating pension, one which increases or decreases as salaries paid to active employees increases or decreases." (*Cochran* v. *City of Long Beach,* 139 Cal.App.2d 282, 285 [293 P.2d 839]; *Eichelberger* v. *City of Berkeley,* 46 Cal.2d 182, 184 [293 P.2d 1]; *Casserly* v. *City of Oakland,* 6 Cal.2d 64 [56 P.2d 237].)

The purpose of such a fluctuating pension system is to keep monthly benefits adjusted to the value of the dollar and the current cost of living, so as to enable the retired employee or other recipient of a pension to "maintain a fairly constant standard of living despite changes in our economy." (*Allen* v. *City of Long Beach,* 45 Cal.2d 128, 132 [287 P.2d 765].)

The charter provisions relative to pensions are a part of the contract of employment between the city and the em-

ployees of the fire and police departments. (*Gibson* v. *City of San Diego,* 25 Cal.2d 930, 935 [156 P.2d 737]; *Terry* v. *City of Berkeley,* 41 Cal.2d 698, 702 [263 P.2d 833].) The city must recognize the contract rights of such employees. (*English* v. *City of Long Beach,* 126 Cal.App.2d 414, 419 [272 P.2d 875].) ■ It must therefore provide a reasonable salary for the positions formerly held by Hacker and Williams; that is to say, one that is commensurate with the duties and responsibilities of their respective positions and in harmony with salary provisions for comparable services. In the view of the trial court, the city fully met its responsibilities in this respect. This is shown not only by the judgment but also by the memorandum of decision filed by the trial judge. It reads in part as follows:

"As to the cross-complainant Williams, I find that he is not entitled to judgment against the city. Mr. Williams retired as a draftsman in the fire department on May 8, 1951. At that time the salary attached to his position was $322. Since that date, the position of draftsman has not been filled and by the enactment of each salary ordinance the salary attached to that position has been raised proportionately to all other persons in the city's employ in the same salary range. For example, a chief clerk in the police department and draftsman in the fire department, were, in 1951, and now are, in the same salary range. Since Williams' retirement the executive officers of the city have not seen fit to fill the position of draftsman in the fire department but have assigned the duties formerly performed by the draftsman in that department to draftsmen in the engineering department. By the rules of the Civil Service Commission the duties of a draftsman in the fire department and a draftsman in the engineering department are different, and a draftsman in the engineering department must have different and higher qualifications than one in the fire department.

"There is no reason why in the efficient management of the city's business the officers of the city may not add to the duties of the employees of one department those formerly performed by an employee of another department, and at the same time, in its salary ordinance, maintain a position which they do not fill."

With respect to the contentions of Hacker the court stated:

"What I have just said as to cross-complainant Williams applies with equal and even greater force to the cross-complainant Hacker."

The evidence supports the position of the trial court.

*Re Williams*: The record shows that for several years prior to his retirement Williams was not paid a salary equal to that established for draftsmen in the engineering department, because a draftsman in the latter department must have higher qualifications and assume greater responsibilities than one in the fire department, but the salary differential remained substantially the same. For example, the salary ordinance of 1948 provided a maximum salary for draftsmen in the fire department of $322 and in the engineering department of $381—a differential of $59. The salary ordinance of 1951, the year in which Williams retired, fixed a maximum salary of $352 for draftsman in the fire department and a maximum salary of $411 for draftsmen in the engineering department, or a difference of $59. In 1952 the top salary for this position in the engineering department was $426 and in the fire department was $367, the same differential as in the ordinance of the previous year. The salary ordinance of 1953 provided for a maximum salary of $378 for draftsman in the fire department and a maximum salary of $439 for draftsman in the engineering department, or a differential of $61. Thus, since 1948 there has been a change in the differential of only $2.00 in the maximum salary provided for draftsmen in the engineering department and draftsman in the fire department. It is thus apparent that Williams has suffered no loss and has no justifiable cause for complaint since the differential between the maximum salary fixed for draftsmen in the two departments has been maintained. This evidence amply support the decision of the trial court. ▮ Furthermore, Williams is not entitled to a pension based on a position which had higher qualifications and greater responsibilities and which therefore commands a larger salary than he was receiving at the time of his retirement.

Williams claims that he had substantially the same qualifications as draftsmen in the engineering department of the city and that he was actually appointed to his position as draftsman in the fire department from the same eligible list as the draftsmen in the engineering department and therefore, he argues, his pension should be based on the salary paid draftsmen in the latter department. This argument is specious. Williams accepted and continued employment in a position which did not require the more extensive duties and greater responsibilities. And, according to wit-

ness Harrington, who was in charge of personnel from 1948 to June 30, 1951, Williams (who retired in May, 1951) did not perform certain types of work performed by draftsmen in the engineering department. An employee is paid for the services rendered by him rather than for the type of work he is capable of handling. Williams was content to hold the easier job over the years and to receive a correspondingly smaller salary. He may not now claim a pension based on the salary attached to a more difficult position that he never held and whose duties and responsibilities he never assumed nor discharged.

*Re Hacker*: An examination of the salary ordinances from 1946 through 1953 discloses that there have been substantial increases in the salary for the position of property clerk. In 1946 the salary was $289 per month; in 1953 it was $398, an increase of $109 per month. It is true this increase has not been as great as that provided for the active uniformed members of the police department, but it has been kept in line with the salary for comparable nonhazardous positions of office employees in the police department. For example, the salary ordinance of 1948 provided a maximum salary of $341 for property clerk and $322 for chief clerk, or a differential of $19. The salary ordinance of 1951 fixed a top salary of $371 for property clerk and $352 for chief clerk, the same differential as that in the 1948 ordinance. In 1952 the salary for property clerk was raised to $386 and that of chief clerk to $367—thus no change in the salary differential between these two positions. The salary ordinance of 1953 fixed the property clerk's salary at $398 and the chief clerk's salary at $378, a differential of $20. It is thus apparent that substantially the same salary differential has been maintained between these two nonhazardous positions of office employees of the police department. This demonstrates that the position of property clerk has been treated fairly in comparison with similarly protected jobs and that Hacker has no justifiable complaint. The evidence amply supports the decision of the trial court.

Hacker points out that in the salary ordinances from 1946 through the first half of 1951 the salary for the position of property clerk and for police sergeant was on a parity. In July of 1951 the city increased the salaries for active uniformed members of the police department. The salary ordinances of 1952 and 1953 placed the salary for sergeant somewhat above that for property clerk. Hacker complains that

this was unfair particularly since, as he says in his reply brief, "the position of property clerk has always been a uniformed promotional position in the Police Department." There is no point to this complaint. Obviously the city had the right to raise the salary of the active members of the department who worked outside and were therefore exposed to greater danger and not to increase in the same amount the salary of those who worked inside and were not thus exposed. The fact that the property clerk wore a uniform is, of course, wholly immaterial.

In his reply brief Hacker states that the position of property clerk "is a secretarial position and has always been filled by a female employee." This does not make improper salary comparisons since they are both essentially office positions. Incidentally, it will be noted that for some years the chief clerk has been paid slightly less than the salary established for the unfilled position of property clerk and that the differential between the two salaries has been constant.

The judgment as to Hacker and Williams is affirmed.

### MURPHY and MRS. ROBBERSON

By its appeal the city raises the question as to the proper basis for determining the monthly pension benefits that it should pay Owen M. Murphy, a retired assistant chief of police, and Anna B. Robberson, the widow of another assistant chief.

Mrs. Robberson was granted a widow's pension[1] in April, 1936, based on the salary fixed for the position of assistant chief of police, which was the rank held by her deceased husband. Mr. Murphy was granted a retirement pension[2] in January, 1946. The position of assistant chief of police was not filled subsequent to the retirement of Murphy. The duties that were formerly assigned to the assistant chief were performed by a captain. It was known at the beginning of each year that the position of assistant chief was not to be filled because no money was requested for that position in the itemized budget. No thought was therefore given as to what the salary range for that position should be. In fact, no salary of any kind was originally provided for the position of assistant chief of police in the salary ordinance for the fiscal year 1948-1949. However, a few days after the

[1]This was under section 187(4) of the city charter.
[2]This was under section 187(2) of the city charter.

ordinance was adopted the position was reinstated by an amendment "at the same figure it had been prior to its deletion." The captain who performed the duties previously assigned to the assistant chief was paid a "Y" salary, which was higher than that paid any other captain.

At all times prior to July 19, 1951, the salary fixed for the position of assistant chief was equal to or in excess of that fixed for captain. Up to that time, Murphy and Mrs. Robberson received their pension benefits based on the salary fixed for the assistant chief's position. On this latter date the salary ordinance established the salary of the captain at a figure above that for the position of assistant chief. The court found ". . . that at all times subsequent to July 1, 1951, the duties previously performed by the defendant Murphy and the deceased husband of the defendant Robberson, as assistant chief of police of the city of Long Beach have been performed by an active member of the police department who has been carried upon the payroll of said department as having the rank of captain in said police department, and that from and after July 19, 1951, the salary which has been provided for and paid to such active member for performing such duties has exceeded that provided for the position of assistant chief of police in the various salary ordinances of the City by a substantial amount." Murphy and Mrs. Robberson take the position that they are entitled to have their fluctuating pensions fixed on the basis of the salary established for the captain who performs the duties formerly assigned to the office of assistant chief since there is no occupant of that position.

In declaring the rights and duties of the parties the court decreed: ". . . that when no person is currently assigned to or carried upon the payroll of the plaintiff city as holding the position of assistant chief of police, the defendants Owen M. Murphy and Anna B. Robberson are entitled to receive from the plaintiff city a fluctuating pension based upon the applicable percentage of the salary actually being paid to the person who is performing the duties previously performed by the assistant chief of police of said city, so long as the person filling that position performs the duties now prescribed by the rules and regulations of the Civil Service Board for the position of assistant chief of police; . . ." In accordance with this declaration and using the "Y" salary rate for captain as the basis on which to figure their retirement, judgment was rendered in favor of Murphy for

$2,578.32 and for Mrs. Robberson in the sum of $2,274.78. These amounts represented their asserted unpaid pension benefits from July 19, 1951, to December 1, 1954.

It is well settled that pension provisions are to be liberally construed in favor of the applicant. (*Gibson* v. *City of San Diego,* 25 Cal.2d 930, 935 [156 P.2d 737]; *Terry* v. *City of Berkeley,* 41 Cal.2d 698, 702 [263 P.2d 833].)

Since the retirement of Murphy the office of assistant chief of police has been dormant. It has existed only on paper as a nominal office without an occupant. Its duties were transferred to and performed by a captain in the department. The salary assigned to the office of assistant chief was purely fictitious for it was never contemplated that it would be used as the basis of hiring someone to fill the position and perform its duties. This accounts for the fact that the salary was allowed to remain virtually static while the salary for captain was increased from time to time and in July, 1951, was placed at a figure substantially above that for assistant chief. This result justifies the inference that the salary for assistant chief did not bear a reasonable relation to the duties and responsibilities of the office nor to other related positions in the department. For all practical purposes, so far as the operation of the police department was concerned, the office of assistant chief did not exist. To use the fictitious salary of a dormant office as the basis of arriving at the pension to which Murphy and Mrs. Robberson were entitled would be both unrealistic and out of harmony with the purpose of the fluctuating pension system. (*Allen* v. *City of Long Beach,* 45 Cal.2d 128, 132 [287 P.2d 765].) In such circumstances ''the law should look to the practical situation actually existing rather than to any purely theoretical'' situation. (*Powers* v. *Board of Public Works,* 216 Cal. 546, 551-552 [15 P.2d 156].) Since the purpose of providing for the payment of a fluctuating pension is to keep the current pension payments adjusted to the current cost of living (*Allen* v. *City of Long Beach, supra*), it is obvious that this purpose has been frustrated insofar as Murphy and Mrs. Robberson are concerned. Thus the evidence amply supports the trial court's decision to the effect that the salary that has been fixed for the office of assistant chief of police since July 19, 1951, has not been a proper basis upon which to figure the pension benefits of Murphy and Mrs. Robberson.

█ The city is under the duty, as we pointed out in discussing the Hacker and Williams appeals, *supra,* to provide a reasonable salary for the office of assistant chief of police; that is to say, one that is commensurate with the duties and responsibilities of the position and in harmony with salaries for comparable services. While the court has, in effect, declared that the city has failed to provide a proper salary for the office of assistant chief, the court has, however, adopted an erroneous method of correcting the situation. It has been decreed that as long as the office of assistant chief remains unfilled the pensions of Murphy and Mrs. Robberson should be figured on the applicable percentage of the salary paid to the officer performing the duties of assistant chief, which in this case is the captain who draws the highest salary in that rank. This method of correction is not only inept but also usurps a duty which plainly belongs to the city, viz., that of fixing appropriate salaries for all municipal positions. This is clearly the duty of the city and we may not assume that it will further neglect its duty, once it has been judicially declared, to fix a proper salary for the position of assistant chief of police even though it does not contemplate filling that position presently.

█ The ineptness of using the salary of a person who holds another position but who also performs the services formerly rendered by the retired employee as a basis for determining the latter's pension lies in the fact that the duties of the current employee will ordinarily include other and different duties than those of the retired employee. Thus it is difficult if not impossible to equate the duties of the latter in terms of those of the former. That difficulty is illustrated in this case. The officer who took over the duties as property clerk, upon occasion, also prepared the department budget.

The portion of the judgment which declares that Murphy and Mrs. Robberson are entitled to receive a fluctuating pension based upon the applicable percentage of the salary actually being paid to the person who is performing the duties previously performed by the assistant chief of police while such position is unfilled and also the money judgment awarded to them is stricken. In lieu thereof it is declared to be the duty of the city to established a reasonable salary for the position of assistant chief of police which is commensurate with the duties and responsibilities of the office and in harmony with salaries for comparable services, and

base the pensions for Murphy and Mrs. Robberson on the applicable percentage of such salary, and to make appropriate adjustments in their pensions since July 19, 1951.

As so modified, the judgment in favor of Murphy and Mrs. Robberson is affirmed. Each side to bear its own costs on appeal.

Moore, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied August 3, 1956, and the petition of defendants and appellants Walter F. Hacker and Joseph R. Williams, and of respondents Owen M. Murphy and Anna B. Robberson for a hearing by the Supreme Court was denied September 6, 1956.