[Civ. No. 17472.   First Dist., Div. One.   Feb. 17, 1958.]

DAVID S. GRAY, Respondent, v. ANTHONY BOLGER et al., Appellants.

John W. Collier, City Attorney (Oakland), and Daniel J. McNamara, Deputy City Attorney, for Appellants.

Carroll, Davis & Burdick for Respondent.

PETERS, P. J.—David S. Gray, a fireman employed by the city of Oakland, sought to compel by mandate the city and its police and fire retirement board to pay him a disability pension, and sick leave benefits, and to cancel his purported discharge. The trial court decreed that Gray was entitled to the pension, and that the purported discharge should be set aside, and entered its judgment accordingly. The retirement board and the city appeal. Gray concedes that if he is entitled to his pension he is not entitled to sick leave benefits.

Respondent was employed by the city as a fireman on November 20, 1937. The city purported to discharge him from this position on December 28, 1954. During this period he was granted by the city two military leaves, the first from March 19, 1942, until March 24, 1947, and the second from October 4, 1950, to December 1, 1954. On December 1, 1954, he received a medical discharge from the Navy, and a disability rating which entitles him to a disability pension of $265.20 per month. About December 1, 1954, he requested to be returned to active duty in the fire department. Upon examination he was found to be physically unfit for such service, and on December 28, 1954, he was discharged for physical incompetency. But on December 10, 1954, he had filed his option to become a member of the retirement system under article XXVI of the charter, and his application for a disability pension under section 243(b) of the charter. The application for a pension was denied by the retirement board upon the ground that he could not legally exercise his option to become a member of the retirement system until he first returned to "active service" in the fire department.

The basic question involved is whether a fireman, disabled in military service while on military leave, may exercise the option granted firemen under article XXVI of the charter to become a member of the retirement system, and then claim a disability pension, if such fireman is unable, because of his disability, to return to active service in the fire department. This, of course, requires an interpretation of the charter provisions.

Prior to 1951 members of the Oakland Fire Department were covered by a pension system established by article XV of the charter under which pension benefits for disability were limited to those cases in which disability was sustained in the performance of duty. In 1951 article XXVI was added to the charter, establishing a new retirement system. Section 243(b) of that article established for firemen who had completed 10 years of service a disability pension for a nonin-

dustrial disability. Respondent was in the Navy when the section was adopted and claims under it. There is no dispute but that time served in the armed forces while on military leave counts as time served within the meaning of pension provisions.

Appellants urge that respondent is not entitled to the benefits of section 243(b) because, so it is claimed, under section 233 of the charter persons absent on leave from duty in the armed forces must return to "active service" in the fire department before they become eligible to exercise their option to join the new system. Based on this premise, it is urged that since respondent is physically unfit for service, he cannot return to active service, and thus cannot elect to join the new system.

Section 233 of the charter relates to membership in the new pension system. It provides: "There is hereby added to the Charter of the City of Oakland a new Article to be known as Article XXVI for the purpose of combining into one system, hereby created and to be known as The Police and Fire Retirement System, and the separate systems heretofore created by the provisions of Articles XIV and XV of this Charter. All persons who become members of the Police or Fire Departments as defined in Articles XIV and XV of this Charter, including all persons hereafter employed to perform the duties now performed by matrons and substitute matrons of the city prison, on or after the effective date of this Article, hereby defined as July 1, 1951, or the first of the month next following approval by the Legislature, whichever is the later, shall be members of the Retirement System established by this Article and shall be subject to the provisions hereof. All members of the Police or Fire Departments who are subject to the Relief and Pension Systems under the provisions of Article XIV and XV of this Charter, and not permanently retired, including matrons and substitute matrons of the City Prison, shall have the option of being members of this Retirement System under the provisions of this Article, said option to be exercised in writing on a form furnished by the Retirement Board as hereinafter defined, to be filed with the Secretary of the Board not later than 90 days after the effective date of this Article. Upon filing said written option, such persons shall be subject to the provisions of this Article as of its effective date, notwithstanding any other provisions of this Charter; provided that *any of such persons who are absent by reason of service in the armed forces of the United States,*

*and any persons on disability retirement under Article XIV or XV, on the effective date of this Article, shall have the right to exercise said option within 90 days after the return of such persons to service in said departments.* Members of the Relief and Pension Systems under Articles XIV and XV of this Charter, who do not exercise the option in this section, shall remain members under the provisions of said articles and under the provisions of Section 252, and benefits being paid, on the effective date hereof, to or on account of persons who are or have been members under said articles, shall be continued at their existing rates and in accordance with the provisions of said articles, but shall be paid from the fund created under this article." (Emphasis added.)

Respondent argues and convinced the trial court that under this section he was not required to return to active service to be entitled to the nonindustrial disability benefit granted by section 243(b). He contends that section 233 is not a limitation on the right of a serviceman fireman to exercise his option to become a member of the amended pension plan, but provides for an expansion of that right, because it granted additional time to such a person to exercise his option. It is also argued that persons absent from service because of nonindustrial disabilities were entitled to exercise their option immediately upon passage of article XXVI and without return to "active" service. It is pointed out that neither section 233 nor any other relevant section of the charter uses the term "active service."

Appellants place their main reliance on the language "such persons who are absent by reason of service in the armed forces of the United States . . . shall have the right to exercise said option within 90 days after the return of such persons to service in said departments." The claim is that this provision clearly and without ambiguity requires a return to active service as a condition precedent to membership in the new system.

Respondent relies on the third sentence of section 233 which provides: "All members of the Police or Fire Departments who are subject to the Relief and Pension Systems under the provisions of Articles XIV and XV of this Charter, and not permanently retired . . . shall have the option of being members of this Retirement System under the provisions of this Article, said option to be exercised in writing on a form furnished by the Retirement Board . . . to be filed . . . not later than 90 days after the effective date of this Article." This sentence indicates, argues respondent, that all members

of the former system, including those absent on military leave, except those permanently retired who are specifically exempted, could have acquired membership in the new system by filing their written option within 90 days from July 1, 1951. The provision relied upon by appellants that persons on military leave would have 90 days after return to service within which to file the option merely expanded their right to file, so that the 90-day limitation after July 1, 1951, would not work a hardship on those who, because of their military service, were not in communication with the board and who would not know that the system had been amended.

While we have been referred to no case directly in point, nor have we found any such case, the law in this general field supports the contentions of respondent. ██ It is now a well settled proposition that ambiguities in pension provisions in charters should be resolved in favor of the applicant so as to carry out their beneficent policy. (*Wendland* v. *City of Alameda*, 46 Cal.2d 786 [298 P.2d 863]; *Terry* v. *City of Berkeley*, 41 Cal.2d 698 [263 P.2d 833]; *Gibson* v. *City of San Diego*, 25 Cal.2d 930 [156 P.2d 737]; *City of Long Beach* v. *Allen*, 143 Cal.App.2d 24 [300 P.2d 349].) In fact, section 234(g) of the city charter here under consideration expressly requires that ''All the provisions of this Article [Article XXVI] are to be liberally construed.''

██ In the present case we are dealing with a public employee who, pursuant to the charter, was granted a leave of absence during the period of his active service to serve with the armed forces. Such a leave does not create a vacancy in the position. It merely suspends the occupancy of the position during the period of military service, leaving the employee with certain rights which he may assert upon the termination of his military service. (*McCoy* v. *Board of Supervisors*, 18 Cal.2d 193 [114 P.2d 569].)

*Gibson* v. *City of San Diego*, 25 Cal.2d 930 [156 P.2d 737], is an interesting case, the reasoning of which is here applicable. In that case a fireman of the city was on leave to serve with the armed forces. The time fixed for his retirement expired while he was still in the armed service. He claimed that he was immediately entitled to his pension without waiting until he was released from the armed forces. The city argued, as does the city in the instant case, that under the charter provision there involved the fireman was not entitled to a pension until he was honorably discharged from the armed forces and returned to active service with the fire de-

partment. The charter provision there involved read as follows (p. 931): " 'In computing the time of service required for retirement, the amount of time served in the United States Army, Navy, Marine Corps or any division thereof in time of war by any member of the Fire Department who shall have left said department for the purpose of and entered such service of the United States Army, Navy, Marine Corps or any division thereof immediately thereafter, *and who shall have returned to said Fire Department within three months, after having been honorably discharged from said military service,* or any member having served as substitute in the San Diego Fire Department, shall have such time counted as part of the aggregate service required for a retirement pension.' (Italics added.) "

The court held that the fireman was entitled to his pension as soon as the fixed time expired and that the italicized provision *supra,* applied only to those whose time for retirement had not yet been completed at the time of release from duty with the armed forces. In so holding the court stated (25 Cal.2d 930, at p. 937):

"To deny the completely earned pension benefit to those who continue on active military duty would tend to discourage rather than encourage such service—directly contrary to one of the primary purposes of the charter provision. Furthermore, to sustain the defendants in their claim of a right to postpone actual payment of the earned pension until discharge of the employe-veteran from military service and his 'return' to the fire department might well operate to deprive the employe and his family altogether of the pension benefit. If he should be kept on active military duty after his right to the pension had otherwise matured (as is the case here) and if he should die before he had been 'discharged' and had 'returned' to the fire department, the position taken by the city in its argument here, if sustained, would forever preclude such employe and his heirs from any recovery on the pension.

"There is apparent no purpose to be served by requiring any employe who has completed his period of service so as to be fully entitled to a pension to return to the fire department. The fire department has no right to his return because it has no right to further service from him. He has fully earned his pension."

The reasoning of that case is persuasive in the instant case.

It should also be mentioned that the state attorney general has officially ruled on a problem similar to the one here pre-

sented. His construction of several state statutes similar to the charter provisions here involved favors respondent. The question presented to him was whether a state employee who becomes incapacitated while on leave for military service must return to active service in order to be eligible for the retirement benefits conferred by the State Employees' Retirement System. The attorney general ruled that such employee did not have to return to active service to be eligible for the pension. In so holding it was stated (13 Ops.Cal.Atty.Gen. 108):

"Government Code, section 20894.5, dealing with contributions by the employer under the State Employees' Retirement System, provides that the employer shall contribute for each member of the system who is absent from State service on military leave the amounts of contributions which would have been made by the employer and the employee had the employee not been absent on military leave, provided that the employee returns to State service within six months after his military discharge. The section then provides:

" 'For the purposes of this section, a member who is or was granted a leave of absence or placed on a state civil service reemployment list as of the same date he was reinstated from military leave shall be considered as having returned to state service within said six months, if he returns to state service at the end of such leave of absence or upon offer of employment from the reemployment list.'

"An employee who has been reinstated from military service has the same status and rights of an employee and of membership in the retirement system as if he had not been absent upon military leave. (Gov. Code, § 20894.2; Mil. & Vet. Code, § 395.1.) Obviously, a State employee who is on a leave of absence retains his status as an employee and as a member of the State Employees' Retirement System and is eligible to be retired for disability while on a leave of absence. When found to be physically incapacitated to perform his duties, the employee must be retired 'forthwith' (Gov. Code, § 21025) and his leave of absence is thereby automatically terminated.

"While the section here involved requires an employee reinstated from military service to return to State service at the end of his leave of absence in order that he may be eligible for the retirement benefits therein provided, this condition obviously is not applicable where there has been an intervening determination under Government Code, section 21025,

that the employee is physically incapacitated to perform his duties and should be retired forthwith. Under such circumstances it was not within the contemplation of the Legislature that such a member must first return to State service before becoming eligible for retirement and for the benefits provided for State employees reinstated from military service.''

Appellants correctly call attention to the fact that in the Gibson case, *supra*, and in the case discussed by the attorney general, the employees were already members of the retirement system, and point out that in the instant case the employee was a member of the old system and had to file an election to come within the new system. Appellants urge that this distinction is vital and contend that before respondent was eligible to join the new system he had to return to active service. While this distinction exists it is not an important one. As already pointed out, respondent although a member of the old system had the legal right to exercise his option immediately upon the enactment of article XXVI. The provision relied upon by appellants—''90 days after return of such persons to service''—simply served to extend the time in which respondent might exercise his option. This was the interpretation of similar language in the charter involved in the Gibson case, *supra*, and in the statutes involved in the case discussed by the attorney general. In both of those cases the same ambiguity existed that exists in the present case. The ambiguities were resolved in favor of the applicants for the pension. The same ambiguity should be so resolved in the instant case. This interpretation is in accord with the statutory policy set forth in the state law applicable to state employees. (See Mil. & Vet. Code, § 395 et seq.; see also *Palaske* v. *City of Long Beach*, 93 Cal.App.2d 120 [208 P.2d 764].)

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.