[Civ. No. 6158. Fourth Dist. July 28, 1960.]

MYRTLE B. LESEM, Individually and as Special Administratrix, etc., Appellant, v. BOARD OF RETIREMENT OF THE SAN DIEGO COUNTY EMPLOYEES' RETIREMENT ASSOCIATION et al., Respondents.

Kenneth Sperry for Appellant.

James Don Keller, District Attorney, Henry A. Dietz, County Counsel, and Bernard L. Lewis, Deputy County Counsel, for Respondents.

SHEA, J. pro tem.*—This is an action in declaratory relief to establish the plaintiff's right to survivorship benefits in the San Diego County Employees' Retirement Fund. Judgment was given for the defendants and plaintiff appeals.

The plaintiff is the unremarried widow of Dr. Alex M. Lesem, deceased. In his lifetime Dr. Lesem served as County Health Officer for the County of San Diego from 1923 until August 1, 1949. On that date he was compelled to retire, having attained the mandatory retirement age of 70 years. He was a member of the County Employees' Retirement Sys-

---

*Assigned by Chairman of Judicial Council.

tem. Under the retirement law as it existed at the time of his retirement, he had the option of selecting one of several types of retirement benefits.[1]

The testimony shows that at the time Dr. Lesem retired, he knew that he had a heart condition and that he had expressed the thought that he expected he would live only about two years. It also shows that his wife was two years younger than he and that she was in very good health at the time. The evidence further shows that prior to his retirement Dr. Lesem's salary was $764.82 per month. In his selection of pension benefits he wanted a plan which would provide sufficient money for him and his wife to live on and still make some provision for his wife after his death. He considered all of the options and selected Optional Settlement Number 1. Commencing August 1, 1949, monthly retirement benefits were paid to him until the time of his death.

In 1953 the County Employees' Retirement Act was amended by the Legislature and section 31760.1 was added. (All references are to sections of the Government Code unless otherwise indicated.) This section provides that upon the death of a retired member who was receiving the unmodified allowance, his surviving spouse would receive 60 per cent of his retirement allowance for the remainder of her life. At the same time, section 31676.1 was also added. This section provided a fixed formula for determining the amount of pension benefits and substantially increased the monthly benefits payable to retired members.

As enacted in 1953, neither of these sections was applicable to persons who had been compelled to retire prior to 1953. Thus persons retiring after 1953 received substantially greater benefits than those who had been compelled to retire prior to that date. In 1955 the Legislature added section 31676.95.[2] In

---

[1]The types of benefits available as applied to Dr. Lesem are as follows:

A. Unmodified Option: This would have paid him $254.48 per month for the remainder of his life with no benefits to his surviving widow.

B. Optional Settlement No. 1: Under this plan he would receive $241.71 per month for the remainder of his life and upon his death, his widow would receive in a lump sum the amount of his accumulated contributions which had not been used in annuity payments.

C. Optional Settlement No. 2: This plan would have paid $170.34 per month to Dr. Lesem or his widow for the rest of either of their lives.

D. Optional Settlement No. 3: This would have paid him $204.07 per month for the remainder of his life and one-half of this amount or $102.03, to his widow for the remainder of her life.

[2]Section 31676.95: ''In every county coming under the provisions of Section 31676.1 subsequent to January 1, 1953, every current service pension and prior service pension payable for time commencing on the

effect, this section made the increased benefits of sections 31676.1 and 31760.1 available to those persons who had been compulsorily retired prior to the effective date of those sections. By action of the Board of Supervisors of San Diego County in December, 1955, these sections were made applicable to the San Diego County Employees' Retirement System to be effective on July 1, 1956.[3]

On June 1, 1956, one month prior to the time the increased benefits became effective in San Diego County, Dr. Lesem sent the following letter to the county retirement board:

"Effective immediately I hereby revoke the cash refund feature of my retirement with your office which was selected under Option #1, in July of 1949. I am revoking this option in order to give my wife, Myrtle B. Lesem, the life income benefit which became available under the unmodified option in 1953."

On June 6, 1953, another letter was sent by an attorney for Dr. Lesem to the retirement board advising the board of Dr. Lesem's desire to change his option in order to take advantage of the increased benefits for his wife which had been made available by the 1953 and 1955 amendments.

Commencing July 1, 1956, Dr. Lesem was paid the increased

---

effective date of this section to any member who was retired prior to said effective date by reason of having attained the age of compulsory retirement, is hereby increased to the amount it would be if the provisions of this chapter, including Sections 31676.1 and 31760.1, as they existed on the date that Section 31676.1 became applicable to the members' retirement system, had been in effect on the date of the actual retirement of the member; but this section does not authorize any decrease in any such pension, nor does this section give any such retired member, or his successors in interest, any claim against the county or district for any increase in any pension paid or payable for time prior to its effective date. Calculations of pensions under this section shall be made on the basis of current interest rate and mortality tables.

"This section shall not apply to any retirement system established under the provisions of this chapter, nor to the members or retired members of any such system unless and until the governing board of the county or district covered by such retirement system elects to be subject to the provisions of this section in the manner provided by Article 2 of this chapter with respect to the establishment of a retirement system hereunder; except that an election among the employees is not required.' '

[3]Under the 1953 and 1955 amendments, the amounts payable as applied to Dr. Lesem are as follows:

A. Unmodified Plan: $475.24 per month for the rest of his life and 60% or $285.14 to his widow for the rest of her life.

B. Optional Settlement No. 1: $462.47 per month for his life and a lump sum payment of the unused accumulated contributions to his widow.

C. Optional Settlement No. 2: $318.12 to Dr. Lesem or his widow for the rest of either of their lives.

D. Optional Settlement No. 3: $381.09 to Dr. Lesem for the rest of his life and one-half or $190.55 to his widow for the rest of her life.

retirement allowance payable under Optional Settlement Number 1. He received the amount of $462.47 per month. In the meantime the county retirement board considered Dr. Lesem's request to change his election from Optional Settlement Number 1 to the unmodified plan and, after receiving an opinion from the county counsel, on August 10, 1956, they sent the following letter to Dr. Lesem's attorney:

"It was determined that the authority to select an option as provided in Section 31760 of the Government Code expires after the retired member receives the first payment of his retirement allowance. Section 31676.95 under which Dr. Lesem will receive an increase in his monthly allowance does not provide for selecting a new option. Therefore, the Retirement Board in their meeting of August 9, 1956 denied the request of Dr. Lesem for lack of authority on the part of the board."

No further action was taken and on July 16, 1957, Dr. Lesem died. On July 15th, the day before his death, he signed a statement wherein he set forth that he had endeavored to change his option in order to make better provision for his wife. Included in the statement is the following:

"It does not seem logical to me that this change in the retirement system voted by San Diego County Board of Supervisors was intended to jeopardize the position of the retired party who had the interest of his spouse in mind at the time of retirement in favor of the person who chose the largest payment for himself without any benefit to his spouse."

Upon his death, under Optional Settlement Number 1, the unused portion of his accumulated contributions became payable to his widow. The retirement board computed this to be the sum of $1,389.46 and on July 26, 1957, a county warrant in this amount was sent to Mrs. Lesem by mail. On August 14, 1957, Mrs. Lesem returned the warrant and by accompanying letter requested that monthly payments be continued "under the modified option." (The testimony indicated that the use of the word "modified" was a typographical error and that the word "unmodified" was intended.) On September 11, 1957, the retirement board considered Mrs. Lesem's request and again denied it. She was advised of this action by a letter sent to her on September 26, 1957, and again the county warrant for a lump sum payment was returned to her. It does not appear what happened to the warrant but it is conceded that she did not accept it.

The question to be decided is whether or not Dr. Lesem, having elected to receive Optional Settlement Number 1 in

1949 when he was compelled to retire, could, in 1956, change that election to avail himself of the increased benefits provided for in the 1953 and 1955 amendments. The answer to this question depends upon the interpretation of two code sections. The first is section 31760:

"Until the first payment of any retirement allowance is made, a member or retired member, in lieu of the retirement allowance for his life alone, may elect to have the actuarial equivalent of his retirement allowance as of the date of retirement applied to a lesser retirement allowance payable throughout life in accordance with one of the optional settlements specified in this article."

The decision of the trial court, in accordance with the contentions of the respondent board, was that this section is controlling; that the use of the words "Until the first payment of any retirement allowance" places a definite limit on the time within which the member could make an election to take an optional settlement in lieu of the unmodified allowance; that Dr. Lesem had made his election on July 5, 1949; that he had received his first payment of retirement allowance on August 1, 1949; and that he was foreclosed from making a new and different election thereafter.

The other section for consideration is section 31676.95. The pertinent portion is as follows:

"In every county coming under the provisions of Section 31676.1 subsequent to January 1, 1953, every current service pension and prior service pension payable for time commencing on the effective date of this section to any member who was retired prior to said effective date by reason of having attained the age of compulsory retirement, is hereby increased to the amount it would be if the provisions of this chapter, including Sections 31676.1 and 31760.1, as they existed on the date that Section 31676.1 became applicable to the members' retirement system, had been in effect on the date of the actual retirement of the member;"

The respondent board acknowledged that this section authorized the increase of Dr. Lesem's pension within the category that he had previously selected and accordingly they increased the amount of his pension on July 1, 1956, from $241.71 per month to $462.47 per month.

It should be noted that under the unmodified plan, prior to 1953 the maximum amount of pension was payable to the retired member for his life and nothing was payable to his surviving spouse, whereas after the amendment to section

31760.1, the maximum amount was payable to the member during his lifetime and thereafter 60 per cent of that amount became payable to his widow. In Dr. Lesem's case, it would mean that he would have received $475.24 per month (instead of the $462.47 that was paid to him) for the remainder of his life and thereafter his widow would receive $285.14 for the remainder of her life. It is readily apparent that under the circumstances of this case, after the change in the code sections, the unmodified plan was of greater benefit to Dr. Lesem than the one he had selected in 1949.

The contentions of the plaintiff are as follows: The enactment of section 31676.95 in 1955 was intended to give to the retired member who was compulsorily retired because of age before 1953, a new opportunity to elect to receive the increased benefits of sections 31676.1 and 31760.1 as if they "had been in effect on the date of the actual retirement of the member." The primary purpose sought to be accomplished by the Legislature in the enactment of section 31676.95 was to increase the pensions of retired members to amounts they would have been entitled to receive if sections 31676.1 and 31760.1 had been in effect on the date the member actually retired. The only way the primary purpose intended by the Legislature can be accomplished is to permit those members who were compulsorily retired prior to 1953 to "go back" to the time of their actual retirement and select the type of retirement benefit they would have selected if these sections had been in effect at that time.

Counsel for plaintiff argues that section 31760.1 was not in existence at the time Dr. Lesem retired, therefore the only way that Dr. Lesem could increase his pension "to the amount it would be if the provisions of . . . Sections . . . 31760.1, . . . had been in effect on the date of the actual retirement of the member," is to permit the retired member to withdraw his prior election and make a new election as if section 31760.1 was in effect when the election was made. He further argues that the retired member must be permitted to make a new and different election or it brings about an absurd result in that section 31760.1 gives a liberal survivor's benefit to the widow of a member who, prior to 1953, selected the unmodified option and thereby made no provision for benefits for his surviving spouse after his death, whereas the same benefit is unavailable to the widow of a member who did make provision for his spouse and selected one of the optional settlements. In other words, the widow of a member who did not care whether she

was protected receives greater survivor's benefits than the widow of a member who had her interests at heart.

Counsel for plaintiff points out that under the cases, pension laws are to be liberally construed in order to carry out their beneficent purpose and any ambiguities in the pension laws are to be resolved in favor of the retired member.

It is contended on behalf of the retirement board that section 31676.95 only requires that the amount of the pension be increased by recomputation under the formula prescribed by section 31676.1; that the section contains no language that expressly or impliedly gives any authority to a retired member to revoke or change an option that previously had been selected; that to permit a retired member to make a new and different election would, in effect, be writing into the section something that is not contained therein; and that this is not permitted even under the rules of liberal construction.

The board further contends that under the circumstances of this case a strict and critical interpretation of the statute should apply rather than a liberal interpretation for the reason that when the board of supervisors activated section 31676.95 as a part of the San Diego Retirement System it was "an act of pure kindness and thoughtfulness." The board was already paying to Dr. Lesem all that he was legally entitled to receive and they were under no legal obligation to add the provisions of section 31676.95 to the retirement system. They point out that the rules of liberal construction apply in a situation where the system is being replaced or modified or where the board is attempting to deprive a member of certain benefits; but where, as here, the inclusion of section 31676.95 in the retirement benefits was unrequired and conferred additional benefits on the members, the statute should be interpreted strictly. From this they argue that since the Legislature did not specifically authorize a member to revoke an option previously selected and make a new and different election, they did not intend any more than that the member should be entitled to have the amount of his pension increased as applied to the option that he had selected previously.

The board further contends that the phrase "Until the first payment of any retirement allowance" as contained in section 31760 fixes the time up until which an election can be made and that once made, it is final and cannot be changed. They argue that the word "until" is unequivocal; that it has a very definite meaning and leaves nothing to surmise or speculation; and that once "the first payment" has been made, "the

die is cast'' and a member cannot change his mind and elect another and different plan.

With regard to this last contention, it appears to be conceded by the plaintiff that once a member had elected to receive under a given optional settlement, he could not change that election except for the operation of section 31676.95. Therefore, the question to be decided is whether or not section 31676.95 gave to the retired member the right to rescind the election previously made and elect a new and different option.

We hold that it does.

The following principles apply to this situation: It has been repeatedly recognized that all pension laws are to be liberally construed to carry out their beneficent purposes. (*England* v. *City of Long Beach,* 27 Cal.2d 343, 346 [163 P.2d 865] ; *Adams* v. *City of Modesto,* 53 Cal.2d 833, 840 [3 Cal.Rptr. 561, 350 P.2d 529].) Any ambiguities in pension laws should be resolved in favor of the applicant. (*Wendland* v. *City of Alameda,* 46 Cal.2d 786 [298 P.2d 863] ; *Gray* v. *Bolger,* 157 Cal.App.2d 583 [321 P.2d 485].) In the application of statutory law, statutes are to be construed according to the intent of the Legislature. If the language of the statute is plain and certain so that no doubt arises as to its meaning, a bare reading thereof is sufficient, and there is no need for construction. Where two constructions are possible and interpretation becomes necessary, the court will follow the rule of finding that construction which leads to the more reasonable result. The legislative purpose and policy should be promoted and in ascertaining the legislative intent, the purpose sought to be achieved and the evils to be eliminated will be considered. The mere literal construction will not prevail over the apparent legislative intent. (*Freedland* v. *Greco,* 45 Cal.2d 462, 467 [289 P.2d 463] ; *Pritchard* v. *Sully-Miller Contracting Co.,* 178 Cal. App.2d 246, 256 [2 Cal.Rptr. 830] [hearing denied by the Supreme Court April 20, 1960] ; *Blevins* v. *Palmer,* 172 Cal.App. 2d 324, 328 [342 P.2d 356].) A statute is to be construed in such a way as to render it reasonable, fair and harmonious with its manifest purpose and in such a way as will avoid mischief or absurd consequences. (*Uhl* v. *Badaracco,* 199 Cal. 270, 284 [248 P. 917] ; *Dickey* v. *Raisin Proration Zone No. 1,* 24 Cal.2d 796, 812 [151 P.2d 505, 157 A.L.R. 324].)

Applying the foregoing principles to the case at hand, the first question is whether or not the language of the statute is so plain and certain as to eliminate any doubt as to its meaning.

It would seem that the conflicting contentions raised by the respective parties in this action point up the fact that there is an ambiguity and that it is necessary to construe the statute in order to ascertain the legislative intent.

It seems apparent that in 1953 the Legislature recognized the rising costs of living and the decrease in the purchasing power of the dollar. In awareness of this, and realizing that the fixed income of those persons entering into retirement had been greatly reduced in purchasing power, they enacted section 31676.1 which materially increased the amount of the retirement benefits. At the same time the Legislature added section 31760.1 to make provision for the surviving spouse of a member. Simultaneously they added numerous other retirement benefits. (Stats. 1953, ch. 843, 844.) It seems obvious that the legislative purpose was to make better provision for persons retiring, more in keeping with the changing economic conditions.

As enacted, these sections only applied to those persons retiring after the effective date of the statute. In 1955 the Legislature recognized the great disparity between the benefits payable to those who retired after the 1953 amendments as compared with the benefits payable to those who had been compelled to retire before the 1953 amendments. To alleviate the inequality of this situation they enacted section 31676.95 in order to give the benefit of the 1953 amendments to those persons who, because of age, had been compelled to retire prior to the 1953 amendments. Again, it seems obvious that the Legislature recognized the hardships that inflation had imposed upon retired persons and passed this section, remedial in nature, so that retired persons could be paid a pension that would be commensurate with the increased cost of living.

To interpret what the Legislature intended, we must look first to the language of the statute. A syntax of the pertinent portion of section 31676.95 is as follows:

". . . Every . . . pension payable . . . to any member who was retired prior to said effective date by reason of having attained the age of compulsory retirement, is hereby increased to the amount it would be if the provisions of this chapter, *including* Sections 31676.1 and *31760.1,* . . . had been in effect on the date of the actual retirement of the member." (Emphasis added.)

What did the Legislature mean when they said "including . . . 31760.1"? If they meant that only those who had elected to receive the unmodified allowance could receive the benefits

of this section, the result is absurd. This is borne out by the following comparison of the benefits payable under the various options (The figures used are those which are applicable to the case at hand):

| | Prior to 1953 | | After 1953 | |
|---|---|---|---|---|
| | Member | Widow | Member | Widow |
| Unmodified | $254.48 | -0- | $475.24 | $285.14 |
| | | Balance | | Balance |
| Option 1 | 241.71 | in fund | 462.47 | in fund |
| Option 2 | 170.34 | 170.34 | 318.12 | 318.12 |
| Option 3 | 204.07 | 102.03 | 381.09 | 190.55 |

Under the benefits payable prior to 1953, a retiring member could logically and reasonably select any one of the options according to his personal circumstances, but after 1953 who can conceive of anyone selecting Option 3 when the unmodified allowance would pay more to the member during his lifetime and then more to the surviving spouse after the member's death. If this section had been in effect on the date of the actual retirement of the member, would anyone in his right mind have selected Option 3? Obviously, they would not. A comparison of the benefits payable under Option 2 with the unmodified allowance indicates that this option also provided a lesser benefit. Under this option the member would have received $157 less each month during his lifetime in order that his widow might receive $33 per month more after his death. While it is conceivable that in some isolated instances this option might be more attractive to the retiring member, certainly this would not be so in ordinary and usual circumstances. Likewise, a comparison of Option 1 shows that it is extremely unlikely that Dr. Lesem would have chosen this option if the 1953 benefits had been available to him at the time he actually retired. At the time of his retirement his total accumulated contribution in the fund amounted to $4,788.88, and had he died the day after his retirement, this would have been the amount payable in a lump sum to his widow. However, at that time Mrs. Lesem was 68 years old and according to the standard mortality tables, had a life expectancy of 9.97 years. Had the benefits of the 1953 amendments been available at that time she would have been entitled to $285.14 per month for the balance of her life after Dr. Lesem's death. Based upon her life expectancy, this monthly payment had an annuity value in excess of $20,000. It would have assured her of an income for the remainder of her life which is what Dr. Lesem wanted. It seems unlikely that any-

one would have chosen Option No. 1 under these circumstances. These comparisons indicate that when the Legislature enacted 31760.1 allowing a 60 per cent survivor's benefit to the widow of a deceased member, for all practical purposes, they virtually eliminated the optional settlements.

The *only* way that the pension of retired members can be increased to what it would have been if section 31760.1 had been in effect on the date the member actually retired is to permit him to make an election *as if that section had been in effect on the date he actually retired.*

Also, the argument of counsel for the plaintiff has much merit in pointing out the absurd result that would flow from the strict interpretation of section 31676.95. Any member retiring before 1953 who selected the unmodified allowance ipso facto made no provision for his surviving spouse. Whether the member did so because he had no concern for the welfare of his surviving spouse or because of an oversight, is immaterial. The fact remains that his widow would receive nothing. Under the interpretation contended for by the retirement board, after the enactment of 31676.95 this member would receive the maximum amount of retirement benefit during his lifetime and upon his death his widow would receive 60 per cent of this amount. On the other hand, the member who was concerned about his wife, as Dr. Lesem was, and who had selected one of the optional settlements in order to make provision for her, would receive a lesser retirement benefit during his lifetime and, except for the minor difference under Option 2, his widow would receive less than she would have received if the unmodified allowance had been selected. This result is neither fair nor equitable and, in our judgment, is absurd. We can only conclude that the Legislature, in enacting section 31676.95, intended that the member should be entitled to make a new election as if section 31760.1 had been in effect at the time the member actually retired.

This holding does not in any way affect the operation of section 31760 except as to those members who were compulsorily retired prior to the 1953 amendments. That section is still effective and still fixes the time for making an election as to which retirement allowance the member desires. Such an election, once made, is final and it would have been final in the case at hand except for the enactment of section 31676.95, and the fact that Dr. Lesem, by his letter of June 1, 1956, notified the Retirement Board of his election ''before the first payment

of any retirement allowance'' was made under the increased benefits that became effective on July 1, 1956.

The board also contends that the 60 per cent benefit which the plaintiff seeks to recover is not applicable under section 31760.1 for the reason that under the provisions of that section the survivor's benefit is only applicable "if not modified in accordance with one of the optional settlements specified in this article.'' This contention presupposes that an election has been made and that it is final. In light of our holding in this case, this contention is without merit.

The board further contends that to allow members to elect a different plan after their retirement would create uncertainties in the administration of the retirement fund and would defeat the necessity for actuarially sound retirement funds. We reiterate that section 31760 is still effective and once a member has selected an option, it is final and cannot be changed. The only reason that a change is permitted in this case is because of the operation of section 31676.95 as applied to those members who were compelled, because of age, to retire prior to 1953. As for "actuarially sound retirement funds,'' it seems obvious that when the Legislature enacted sections 31676.1 and 31760.1, and then made those sections retroactive by the enactment of section 31676.95, and the board of supervisors adopted the change in San Diego County, they completely ignored any actuarial basis for the payment of pensions to those who had retired prior to 1953. Certainly the actuarial basis by which it was determined that Dr. Lesem should receive $241.71 in 1949, did not sustain the payment of $462.47 which he received after July, 1956.

A second point raised by the plaintiff on this appeal is that the trial court erred in refusing to find that Dr. Lesem would have elected to receive the unmodified allowance if the death benefits provided for by section 31760.1 had been available at the time of his actual retirement. Under the trial court's ruling that Dr. Lesem had no right to make a new and different election, it was immaterial to make a finding on what plan he would have elected to receive had he been permitted so to do. In view of our decision in this case, this question of fact will have to be resolved.

While there is authority for appellate courts to make findings of fact under proper circumstances (Code Civ. Proc., § 956a), ordinarily this is a function of the trial court and will not be invoked by an appellate court except to affirm the judgment or to reverse with directions. (*Tupman* v. *Haber-*

*kern,* 208 Cal. 256 [280 P. 970].)　　The trial court, having heard the testimony and observed the witnesses, is in a better position to make findings on issues of fact. The case will be remanded to the trial court with directions to make a finding as to which option Dr. Lesem would have elected.

　The last point raised by the plaintiff is that the court erred in failing to define the respective rights and duties of the parties as is required in actions for declaratory relief (The judgment of the court was that the plaintiff take nothing by her complaint.) This point is well taken. The court must declare the rights of the parties even though that declaration is not favorable to the plaintiff. (*Maguire* v. *Hibernia S. & L. Soc.,* 23 Cal.2d 719 [146 P.2d 673, 151 A.L.R. 1062]; *Essick* v. *City of Los Angeles,* 34 Cal.2d 614 [213 P.2d 492].) Since the case is to be remanded to the trial court for further proceedings, we can assume that in its final judgment the rights of the parties will be properly adjudicated.

The judgment is reversed and the cause remanded for findings and adjudication consistent with this decision. Plaintiff to recover costs on appeal.

Griffin, P. J., and Shepard, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 20, 1960.