[Civ. No. 40168. Second Dist., Div. Four. Jan. 26, 1973.]

LEO M. ANDERSON, Plaintiff and Respondent, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

## COUNSEL

Roger Arnebergh, City Attorney, James A. Doherty, John Daly, Assistant City Attorneys, Siegfried O. Hillmer and Arthur D. Rutledge, Deputy City Attorneys, for Defendants and Appellants.

Lemaire & Faunce and Edward L. Faunce for Plaintiff and Respondent.

## OPINION

DUNN, J.—On June 15, 1971, plaintiff filed a verified petition for a peremptory writ of mandate.[1] (Code Civ. Proc., §§ 1084-1087.) Named as defendants were the City of Los Angeles, the Board of Administration of the City Employees' Retirement System, and the manager-secretary of the board. This is an appeal by those defendants from a judgment which ordered issuance of a peremptory writ of mandate, commanding them to consider and act upon the merits of plaintiff's application for disability retirement benefits.

Plaintiff's petition alleged: he was a member of the city employees' retirement system; on August 15, 1969, he injured his knee while working for the public works department of the city; thereafter he worked for the city intermittently through January 28, 1970, when he telephoned his supervisors and informed them that he was "sick because of his knee"; on May 15, 1970, plaintiff was given a notice of discharge by the city specifying as the ground for discharge that he had been absent without valid leave since January 28, 1970; on May 19, 1970, plaintiff filed an appeal of the discharge with the board of civil service commissioners; on June 3, 1970, plaintiff was granted a hearing on the appeal which hearing took place September 30 and October 1, 1970; on two occasions during September and October 1970 plaintiff requested that defendant board of administration

---

[1] Plaintiff also sought declaratory relief. However, in view of the judgment entered it is unnecessary to consider this aspect of the petition.

permit him to file an application for disability retirement but on each occasion the request was denied; on October 30, 1970, the board of civil service commissioners upheld plaintiff's discharge; on the same date plaintiff sent a letter to defendant board, again requesting that he be allowed to file an application for disability retirement benefits; on November 6, 1970, plaintiff received a letter from the city attorney informing him that his application was barred because not filed within six months after discontinuance of his service with the city, as required by section 510 of the city charter; plaintiff was further informed that if he filed an application, the city attorney would advise defendant board to deny it because not timely filed; nevertheless, on February 1, 1971, plaintiff filed an application for disability retirement; on March 9, 1971, defendant board denied the application on the ground it was not timely filed under section 510.

Plaintiff further alleged: his service with the city was not discontinued until October 30, 1970, when defendant board upheld his discharge for which reason his application for disability retirement was filed within the six-month period prescribed by section 510; plaintiff had no adequate remedy at law and would suffer irreparable injury by the loss of his disability pension unless defendants were ordered to accept and act upon his application.

Defendants filed an answer admitting most of the factual allegations of the petition, but denying that plaintiff's application for disability retirement was timely filed under section 510. In this regard defendants alleged that section 510 must be construed with section 501 of the city charter, which defines "service" or "city service" to mean only those periods within which a member of the retirement system received compensation from the city as an employee. The answer further alleged: January 27, 1970, was the last day plaintiff was on the city payroll; on May 20, 1970, plaintiff was given the notice of discharge, effective as of May 15, 1970; the city attorney at no time advised plaintiff not to file an application for a disability pension.

Following the filing of the answer, plaintiff noticed a motion, to be heard November 10, 1971, for issuance of a peremptory writ of mandate which would command defendants to accept and act upon his application for disability retirement. (Code Civ. Proc., § 1088.) The motion was heard. The verified pleadings, declarations and attached exhibits were received in evidence by reference.

Findings of fact and conclusions of law were signed and filed, the court finding: under section 510 of the city charter, which requires that an application for disability retirement be filed within six months "after the discontinuance of the service" of a city employee, some action by the city

is required in order to effectuate the discontinuance; such action was taken by the city when it issued to plaintiff a notice of discharge on May 20, 1970; plaintiff appealed his discharge to the civil service commission which, after a hearing, issued a ruling on October 30, 1970; plaintiff's application for disability retirement was filed February 1, 1971. The court drew the following conclusions of law: plaintiff acted reasonably in appealing his discharge; under *Myers* v. *County of Orange* (1970) 6 Cal.App.3d 626 [86 Cal.Rptr. 198] the six-month period specified in section 510 began to run November 1, 1970; thus, plaintiff's application was timely filed and defendants were under a duty enjoined on them by law to consider the merits of the application.

Appellants contend the trial court erred in its interpretation of section 510 of the city charter. Section 510 is found in article XXXIV ("City Employees' Retirement System") of the charter, and provides in part: "A. Any member [of the retirement system] who has five (5) or more years of continuous service and who has become physically or mentally incapacitated and who is incapable, as a result thereof, of performing his duties, may be retired upon written application of such member . . . . Any such *written application may be made at any time within, but not exceeding, six months after the discontinuance of the service of such employee . . . .*" (Italics added.) Appellants argue that the meaning of "service," as used in the italicized portion of section 510, is as defined in section 501, which provides in pertinent part: "For the purpose of this Article [XXXIV], the following words and phrases shall have the meaning ascribed to them in this section unless a different meaning is clearly indicated by the context: . . . 'City Service' or 'Service': Shall mean only those periods during which a member received compensation from the city as an employee or during which he not only received Workmen's Compensation benefits (Div. IV, Labor Code) for temporary disability on account of any injury or illness arising out of and in the course of his employment with the city but for which he also made contributions to the fund as provided in this Article. . . ."

Based upon this definition of service, appellants contend that the term, "discontinuance of . . . service," in section 510 must be construed to mean the last date on which an applicant for disability retirement was on the city payroll; that since this date in respondent's case was January 27, 1970,[2] and his application for disability retirement was filed more than six months thereafter, the application was barred.

---

[2]Defendants so alleged, but the trial court made no finding on the point. At any rate, as will appear subsequently, the last date plaintiff was on the city payroll is not significant herein.

■ There is no rule of interpretive law which requires the same meaning to be given to the same word when used in different places in the same statute. (*Lambert* v. *Conrad* (1960) 185 Cal.App.2d 85, 95 [8 Cal.Rptr. 56].) When the occasion demands it, the same word may have different meanings to effectuate the intention of the act in which the word appears. (*Wall* v. *Board of Directors* (1904) 145 Cal. 468, 473 [78 P. 951].)

■ "It is a cardinal rule to be applied to the interpretation of particular words, phrases, or clauses in a statute . . . that the entire substance of the instrument or of that portion thereof which has relation to the subject under review should be looked to in order to determine the scope and purpose of the particular provision therein of which such words, phrases, or clauses form a part; and in order also to determine the particular intent of the framers of the instrument in that portion thereof wherein such words, phrases, or clauses appear." (*Wallace* v. *Payne* (1925) 197 Cal. 539, 544 [241 P. 879].) ■ Section 501 recognizes these principles, by providing that the words and phrases therein "shall have the meaning ascribed to them in this section *unless* a different meaning is clearly indicated by the context." (Italics added.)

Article XXXIV sets up a retirement system and establishes a fund out of which benefits are paid to city employees upon retirement. (§§ 500, 504.) Every employee is a member of the system and is required to contribute a portion of his salary to the fund. (§§ 502, 507.) A member receives benefits from the fund after completing the minimum number of years of service entitling him to retire, and his benefits are based upon the accumulated contributions at the time of his retirement. (§ 508.) In this context, the word "service" obviously has the meaning ascribed to it in section 501, i.e., "those periods during which a member received compensation from the city as an employee. . . ."

However, it is by no means clear that "service" has this same meaning in the phrase "discontinuance of . . . service" which appears in section 510. Contrary to appellants' contention, this language is ambiguous, and hence is subject to judicial construction. (See: *Gibson* v. *City of San Diego* (1945) 25 Cal.2d 930, 933-935 [156 P.2d 737].) Such language must be construed in context, keeping in mind the nature and purpose of section 510. (*People* v. *Berry* (1956) 147 Cal.App.2d 33, 37 [304 P.2d 818]; *Johnstone* v. *Richardson* (1951) 103 Cal.App.2d 41, 46 [229 P.2d 9].)

■ Section 510 is entitled "Disability Retirement" and its obvious purpose is to grant to disabled employees and their families the means of sustaining themselves, following the employee's retirement on account of disability. Since it is a pension provision it should be liberally con-

strued with a view to conferring the benefits intended (*Adams* v. *City of Modesto* (1960) 53 Cal.2d 833, 840 [3 Cal.Rptr. 561, 350 P.2d 529]; *Dillard* v. *City of Los Angeles* (1942) 20 Cal.2d 599, 602 [127 P.2d 917]; *Lundrigan* v. *City of Los Angeles* (1947) 82 Cal.App.2d 238, 253 [186 P.2d 12]), and ambiguities therein should be resolved in favor of the applicant. (*Wendlan* v. *City of Alameda* (1956) 46 Cal.2d 786, 791 [298 P.2d 863]; *Lesem* v. *Board of Retirement* (1960) 183 Cal.App.2d 289, 298 [6 Cal.Rptr. 608]; *Gray* v. *Bolger* (1958) 157 Cal.App.2d 583, 587 [321 P.2d 485].)

 In light of these principles, we agree with the trial court's construction of the phrase "discontinuance of . . . service." As stated by the court during the hearing, employees who do not report for work on account of illness or injury generally have no reason to believe their absence might be considered by the city as constituting a discontinuance of their service, such as would mark the commencement of the six-month period during which time they must file an application for disability retirement or be barred from doing so thereafter. Thus, it is consistent with the nature and purpose of section 510 to construe "discontinuance of . . . service" to mean that the city must take affirmative action, informing an employee that his service is discontinued, in order that an employee may have the opportunity to apply for benefits within the prescribed period.

In this case, such affirmative action was taken by the city on May 20, 1970, when it issued respondent a notice of discharge. Thereafter, respondent appealed, the appeal being determined on October 30th. It is true that respondent did not file his application for disability retirement until February 1, 1971, but the trial court concluded the application was timely because, under *Myers* v. *County of Orange* (1970) 6 Cal.App.3d 626 [86 Cal.Rptr. 198], the six-month period set forth in section 510 did not commence to run until November 1, 1970.

The facts in *Myers* were: a county employee was discharged in August 1966 and died the following December; in April 1967 his surviving wife requested that the county retirement board hold a hearing, rescind the order of discharge and reinstate her husband as a county employee from the date of discharge to the date of his death, in order that she might receive retirement benefits; in May 1967 the board notified the wife of its refusal to grant a hearing or to act; in June 1967 the wife commenced a superior court action, seeking a writ of mandate compelling the board to grant a hearing; in November 1967 judgment was entered denying the writ, and the wife did not appeal; in February 1968 she filed with the county a claim for damages based upon the allegedly wrongful discharge of her husband; the claim was rejected; thereafter, in March 1968, the

wife filed a superior court action for damages for the alleged wrongful discharge; a demurrer to the complaint was sustained without leave to amend on the ground plaintiff did not file her claim with the county within one year after accrual of her cause of action, and therefore the action was barred under the applicable provisions of the Government Code.

In reversing the judgment of dismissal, the appellate court relied upon the following rule: "When an injured person has several legal remedies and, reasonably and in good faith, pursues one designed to lessen the extent of the injury or damages, the statute of limitations does not run on the other while he is thus pursuing the one." (6 Cal.App.3d at p. 634.) The court then stated that upon the death of plaintiff's husband, two alternatives were open to her: she either could file a claim for damages and thereafter institute suit, or she could apply for a hearing by the appeal board and seek to have the order of discharge rescinded and her deceased husband reinstated to the date of his death. She chose the latter remedy, and in so doing acted reasonably. Therefore, the one-year claim period was tolled during the time consumed by her application for a hearing before the appeal board, including the mandate proceeding; the court held her claim with the county was timely filed.

As appellants point out, the case at bench is factually different from *Myers.* Nevertheless, the rule applied there is equally applicable here. Thus, when the notice of discharge was issued to respondent, he either could appeal the discharge or apply for disability retirement. Immediately upon receipt of the notice he appealed the discharge;[3] the court found he acted reasonably in pursuing this course. A decision on the appeal was rendered October 30, 1970. Hence, the six-month period provided in section 510 did not commence until November 1, 1970, and respondent's application for disability retirement, filed February 1, 1971, was timely.

Appellants argue that respondent could have filed a timely application for disability pension benefits, with the request that no action be taken pending the outcome of the appeal of his discharge. They argue that appeal of the discharge and an application for disability retirement benefits are inconsistent remedies, for which reason the appeal process did not delay commencement of the six-month period during which the application for disability retirement must be filed. However, there is no requirement that each of the alternative remedies available to a party must be designed to achieve the same result. The only requirement is that the remedy chosen be designed "to lessen the extent of the injury or damages." Appeal from an order of discharge meets this requirement.

[3]Plaintiff alleged, and defendants admitted, that the appeal was filed May 19, 1970.

Since respondent's application for disability retirement was timely filed, a duty was enjoined upon appellants by city charter section 510 to consider the merits of the application, and the peremptory writ of mandate was properly issued commanding appellants to perform this duty. (Code Civ. Proc., § 1085; *Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303, 315 [144 P.2d 4]; *Spear* v. *Board of Medical Examiners* (1956) 146 Cal.App.2d 207, 212 [303 P.2d 886]; *Allen* v. *Bowron* (1944) 64 Cal.App.2d 311, 313 [148 P.2d 673].)

The judgment is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 21, 1973.