61 Cal.Rptr.3d 62 (2007)
151 Cal.App.4th 961
John McDONALD et al., Plaintiffs and Appellants,
v.
ANTELOPE VALLEY COMMUNITY COLLEGE DISTRICT, Defendant and Respondent.
No. B188077.
Court of Appeal of California, Second District, Division Five.
June 1, 2007.
As Modified June 25, 2007.
*64 Law Offices of Gregory W. Smith and Gregory W. Smith, Beverly Hills; Christopher Brizzolara, Playa Del Rey; and Goldberg & Gage and Bradley C. Gage, Woodland Hills, for Plaintiffs and Appellants.
Carpenter, Rothans & Dumont, Steven J. Rothans and Justin Reade Sarno, Los Angeles, for Defendant and Respondent.
*63 TURNER, P.J.

I. INTRODUCTION
Plaintiffs, John McDonald, Sylvia Brown, and Sallie Stryker, appeal after the summary judgment motions of defendant, Antelope Valley College District, were granted. The summary judgment motions were granted on the sole ground the plaintiffs' administrative complaints *65 were not filed with the Department of Fair Employment and Housing within the one-year time period specified in Government Code[1] section 12960, subdivision (d), which provides in part, "No complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred. . . ." We reverse the order granting summary judgment against Mr. McDonald and Ms. Brown. However, we affirm the order granting summary judgment as to Ms. Stryker.

II. BACKGROUND

A. The Second Amended Complaint  General Allegations
The original complaint was filed on October 24, 2003, and amended on December 17, 2003. The second amended complaint, which is the operative pleading, was filed on May 21, 2004, and contains causes of action for: racial harassment and discrimination (first); retaliation in violation of the Fair Employment and Housing Act (second); and failure to take all reasonable steps necessary to prevent discrimination and retaliation (third). The second amended complaint alleges that: plaintiffs are African-Americans; defendant has a 70-year history of discriminatory hiring practices against African-Americans in full time tenure track (teaching only) and faculty positions; the discriminatory practices include hiring only 5 female and 1 male African-Americans in full time tenure track (teaching only) positions; 3 of the African-American teaching faculty members resigned their positions because of defendant's racial discrimination and bias; in 2000, a survey was conducted of the prior 10 years of faculty hiring by defendant; a report of the survey established that defendant had consistently demonstrated racial and sexual discriminatory practices toward African-American employees; and defendant's actions constituted a systematic policy of discrimination in employment on account of race which is actionable under California Constitution, article 1, section 8.
The second amended complaint also alleged that defendant engaged in the following discriminatory practices: a pattern of changing hiring policies as well as past procedures when an African-American is qualified for and should be appointed to an interim position; a pattern of changing hiring policies and procedures when an African-American is being interviewed for a full time position; the systematic denial of interviews to qualified African-American applicants; employment of less than three percent of full time tenure track African-American faculty; and severe, pervasive, and systematic practices, policies, and procedures reflecting institutional bias and prejudice against African-Americans. According to the second amended complaint: plaintiffs were qualified for various promotions while employed by defendant; defendant failed to promote plaintiffs and engaged in other adverse employment actions against them because of their race; and plaintiffs utilized formal and informal remedies which continued until the spring of 2002.
The second cause of action for retaliation alleges: "On or about December 17, 2002, one of the employees of defendants, and each of them, sent an [e-mail] to all of the faculty and staff at Antelope Valley College. This [e-mail] specifically equated the conduct of plaintiffs [] in pursuing their complaints for discrimination and retaliation to the conduct of the September 11, 2001 Twin Tower terrorists. Despite such discriminatory and retaliatory conduct, *66 defendants, and each of them, failed to take prompt and appropriate corrective and remedial action, including but not limited to appropriate disciplinary action against the employee who authored and caused the e-mail to be disseminated." In the third cause of action, plaintiffs alleged that defendants: did not take reasonable steps necessary to prevent discrimination and retaliation from occurring; failed to conduct appropriate investigations; provided false and inaccurate, incomplete "and/or" misleading information; and neglected to provide plaintiffs with pertinent information needed to pursue administrative and other remedies. In addition to the general allegations concerning discrimination, the second amended complaint specifically alleged facts related to each plaintiff as follows.

B. Alleged Discriminatory And Retaliatory Conduct Against Mr. McDonald
Mr. McDonald began his employment with defendant in 1978 as an Extended Opportunity Program and Service school relations officer. He became a tenure tracked Extended Opportunity Program and Service counselor in 1986. From 1979 through the present, Mr. McDonald served as an adjunct professor of African-American History and Literature. Mr. McDonald has for many years been involved with organizations and issues pertaining to equal protection and equal opportunity for African-Americans. He has taken a long-time and active role in the development and activities of the Antelope Valley College Black Student Union. Mr. McDonald has attempted to motivate defendant to recruit African-American students to attend the college. Mr. McDonald also sought to encourage defendant to provide adequate funding and support in order to insure equal opportunity and protection for African-Americans at the college.
Mr. McDonald alleged the following discriminatory "and/or" retaliatory conduct was directed at him in response to his activism while employed by defendant: in 1984, he was summarily removed from his position as a school relations officer and charged with misappropriation and embezzlement of college funds; a jury found him not guilty of the false charges; in 1992, a "Transfer Counselor/Director" position opened at the college; the position required a credentialed counselor and familiarity with course articulation between community colleges and California universities; the position also required experience with the "matriculation/transfer" of historically underrepresented ethnic groups; Mr. McDonald met all the criteria for the position; after he applied and interviewed for the position, defendant refused to hire anybody to be a transfer counselor; defendant subsequently reopened the position; Mr. McDonald reapplied for the position; defendant did not select Mr. McDonald because of his race; defendant selected a non-African-American with less experience and qualifications in the field of counseling; and the person selected for the position had no experience with the matriculation or transfer of historically underrepresented ethnic groups.
Mr. McDonald also alleged that, in 2000, he applied for and was selected for a Social Services Division Screen Committee, which was empowered to make the selection of candidates for full time positions. The committee consisted of seven representatives including two advisory only positions and five voting members; three were African-American and two were Caucasian. The second amended complaint alleged that, in violation of its own policy, defendant subsequently removed all three of the African-American members. This occurred after one of the Caucasian members complained that the committee was weighted too heavily with African-Americans. In response to these complaints, *67 defendant subsequently reappointed one previously removed African-American, three Caucasians, and one Latino.
The second amended complaint further alleged that, in 2000, Mr. McDonald applied for the position of Dean of Counseling but was not selected because of his race. Defendant instead selected a retired Caucasian male with less experience and qualifications in the field of counseling. In 2000, Mr. McDonald applied for the position of Extended Opportunity Program and Service Director. Although Mr. McDonald was qualified with 22 years of experience with Extended Opportunity Program and Service as a counselor, he was not selected due to his race. Defendant instead placed the program under the "de facto" direction of a person who was on sabbatical.
Mr. McDonald alleged that he was retaliated against for complaining of discrimination in the following manner. In November 2001, he was given a written reprimand and disciplined for alleged "absenteeism" by defendant. Mr. McDonald had not been unduly absent from his job and any absences were the result of health conditions covered by accrued sick leave. The written reprimand is part of his permanent file and will preclude or hinder him from promotions, transfers, and other employment opportunities. As previously noted, Mr. McDonald further alleged that he was subjected to a retaliatory e-mail on December 17, 2002. On December 20, 2002, defendant filed an administrative complaint with the Department of Fair Employment and Housing. On January 7, 2003, defendant received a right to sue letter.

C. Alleged Discriminatory And Retaliatory Conduct Against Ms. Brown
The second amended complaint alleged that Ms. Brown began her employment with defendant in 1998 as a Library Technician's Assistant. She remains in that position. In 1999, defendant opened a position for employment of a Database Administrator. Under a collective bargaining agreement, a "house applicant" who meets minimum qualifications is to be interviewed. Ms. Brown, who applied for the Database Administrator position, more than met the minimum qualifications but was not interviewed. Defendant refused to interview Ms. Brown because of her race. Defendant selected a non-African-American to fill the position. In 2000, the person defendants hired for the Database Administrator position was asked to resign because of poor performance. Defendant subsequently refused to interview Ms. Brown for the position until ordered to do so. The second amended complaint alleged the interview was a sham because: it was conducted well after the other applicants for the position had already been interviewed; decisions had been made about the position; and defendant chose a non-African-American for the position. Ms. Brown also alleged defendant's refusal to interview her was motivated by her race and in retaliation for complaining to the federal Equal Employment Opportunity Commission. Ms. Brown filed an administrative complaint with the Department of Fair Employment and Housing on October 11, 2002. She received a right to sue letter dated October 24, 2002.

D. Alleged Discriminatory And Retaliatory Conduct Against Ms. Stryker
With respect to Ms. Stryker, the second amended complaint alleged she began her employment with defendant in 1992 as an adjunct sociology professor and is currently in that position. In 1993, Ms. Stryker prepared a grant application which was *68 submitted to the State of California for funding of a program to enhance minority recruitment of tenured faculty members. The grant application was approved by the chancellor's office as a permanent program. As the project manager, Ms. Stryker hired African-American staff. The program began operations and Ms. Stryker assisted at least 15 minority applicants in applying for open positions in the English Department. However, defendant did not hire any of the applicants. The program was closed after the grant funds were exhausted. When the program reopened, it was operated by a Caucasian female.
In 1997, Ms. Stryker added Work Experience classes to her teaching load. She became the teacher of record for the course. This additional class increased her teaching load from 9 units to 13 units. This was more than the 60 percent load allowable for adjunct faculty members. Under California law, anything over the 60 percent teaching load for 3 consecutive semesters requires that the adjunct faculty member be given a permanent position. In September 1999, defendant discovered it had more than 16 employees who were impacted by the 60 percent rule and, therefore, entitled to be permanently hired. In December 1999, defendant permanently hired 13 employees. None of the permanent hires was African-American. Ms. Stryker alleged that even though she qualified under the 60 percent rule, defendant refused to permanently hire her because of her race.
In 2000, a full time position for an instructor in the Sociology Department opened. Ms. Stryker, who was qualified for the position, applied. The Sociology Screening Committee was empowered to make the selection of candidates for the open position. As noted above, protests were allegedly made against a committee of three African-Americans and two Caucasians. The committee was reconstituted to a consist of three Caucasians, one Latino, and one African-American. Ms. Stryker, the only African-American to apply, was not hired allegedly as a result of her race. Instead, a Caucasian male was hired. On August 23, 2002, Ms. Stryker was removed from the union negotiation committee in retaliation for her discrimination complaint against defendant. Ms. Stryker filed an administrative complaint with the Department of Fair Employment and Housing on November 15, 2002. She obtained a right to sue letter dated December 11, 2002.

E. The Three Summary Judgment Motions

1. Overview
Defendant filed three separate summary judgment or adjudication motions. Initially, the parties briefed the issues of whether defendant was entitled to summary judgment on statute of limitations grounds and the merits against all three plaintiffs. Each of defendant's three separate statements set forth facts relevant to the administrative complaint statute of limitations issues and the merits of plaintiffs' discrimination claims. After the parties filed their supporting and opposing papers, the trial court conducted a hearing on the summary judgment motions. Then, the parties stipulated that the only issue the trial court should determine was whether plaintiffs' administrative complaints were timely filed with the Department of Fair Employment and Housing in violation of section 12960, subdivision (d). Accordingly, our discussion relates solely to whether the trial court properly ruled plaintiffs' administrative complaints were not filed with the Department of Fair Employment and Housing within one year of the date after the alleged discriminatory practices *69 occurred as required by section 12960, subdivision (d).
In anticipation of plaintiffs' response to the summary judgments motions, defendants argued the one-year section 12960, subdivision (d) time period was not tolled under equitable tolling or continuing violation theories. Defendant argued no equitable tolling occurred because all three plaintiffs filed a discrimination complaint with the California Community Colleges Chancellor's Office on November 2, 2001. Defendant sent letters to plaintiffs dated November 7, 2001, which expressly advised them: "[T]he Chancellor's Office does not have primary jurisdiction over employment related cases and in order to obtain a final determination, you must file your complaint with the Department of Fair Employment and Housing.... The office nearest you is located at 1732 Palma Drive, Suite 200, Ventura, CA 93003. You may file a complaint with the [Department of Fair Employment and Housing] at anytime before or after the district issues its report and you may do so whether or not you also submit objections to the Chancellor's Office...."
Defendant further argued plaintiffs had not produced evidence that any of the alleged discriminatory conduct occurred during the section 12960, subdivision (d) one-year filing period to qualify for an exception under the "continuing violation" doctrine. Defendant argued that plaintiffs' allegations it failed to take steps necessary to prevent discrimination and retaliation were derivative of the time barred Fair Employment and Housing Act claims. Plaintiffs argued: their administrative complaints filed with the Department of Fair Employment and Housing were timely; the doctrine of equitable tolling extended the time to file their claims; equitable tolling principles applied because they attempted to remedy the wrongs by using internal grievance procedures pursuant to California Code of Regulations, title 5, section 59300 et seq.; and the internal grievance procedures were not finally concluded before the applicable one-year period.

2. Evidence concerning Mr. McDonald

a. defendant's evidence
Defendant argued that the following undisputed evidence established that Mr. McDonald failed to comply with the one-year statute of limitations for filing his administrative complaint with the Department of Fair Employment and Housing. According to defendant, Mr. McDonald claims that he suffered discrimination "and/or" retaliation on four different occasions. This occurred: in January 2000 when Mr. McDonald was not hired for the Dean of Counseling position; in January 2000 when he was not hired as Extended Opportunity Program and Service Director; in January 2001 he was removed from the selection committee; and in November 2001 when he was given a written reprimand for absences. Mr. McDonald filed a Department of Fair Employment and Housing administrative complaint on December 20, 2002. Mr. McDonald's December 20, 2002 administrative complaint states: "I believe that between July 2002 and present (December 20, 2002) [defendant] denied me a promotion to be Director of [Extended Opportunity Program Services] and [has] retaliated against me because of my race (Black) and sex (male) and in retaliation for complaining against discrimination in violation of the California Fair Employment and Housing Act."

b. Mr. McDonald's evidence
Mr. McDonald presented specific evidence as to the matters set forth in his administrative complaint. Mr. McDonald's declaration states: around June 2001, he applied to be appointed interim director of *70 the Extended Opportunity Program and Service Program; his request for appointment was denied; Dietra Jackson was hired as an "hourly" director; and when she quit, the position was not advertised nor was he given an opportunity to apply. On October 24, 2002, Mr. McDonald wrote Chancellor Thomas Nussbaum of the California Community College Colleges and complained that the failure of defendant to fill the Extended Opportunity Program and Service Program Director's position was legally inappropriate. In his October 24, 2002 letter, Mr. McDonald did not request that he be appointed to the director's position of the Extended Opportunity Program and Service Program.
Mr. McDonald presented evidence concerning other aspects of the defendant's discriminatory environment. Mr. McDonald presented evidence that on several instances he spoke out against defendant's discriminatory practices against African-American employees. Because he had been a racial equality activist while working for defendant, he was summarily removed from the campus in October 1984. After his removal, defendant falsely charged him with misappropriation of funds for which he was tried and acquitted by a jury. In 1985 and 1986, after his acquittal, he was removed from teaching two classes. In 1991 or 1992, he applied for the Transfer Center Counselor Director position but was denied the position despite his qualifications. In 1999 or 2000, defendant refused to appoint Mr. McDonald as the interim Dean of Counseling. In 2000, defendant changed the qualifications for the full time position of Dean of Counseling. During 1999 through 2002, defendant did not fill the Director of Extended Opportunity Program and Service position. This was done in order to deny Mr. McDonald the position.
Sometime around October and November 2000, Mr. McDonald and two other African-Americans voting members were removed from a Selection Committee under false pretenses. In June 2001, he was denied the position of Extended Opportunity Program and Service Director. In November 2001, a letter was placed in his file regarding absenteeism in order to harass and retaliate against him. According to Mr. McDonald the claims were false because he did not take any sick leave that was not authorized by his contract or defendant's policy. On December 17, 2002, one of defendant's employees sent an email equating plaintiffs' conduct to that of the September 11, 2001 terrorists. In 2003, Mr. McDonald was denied the Director of Extended Opportunity Program and Service position. This occurred after defendant's Vice President of Human Resources Dee Henry Lee and President Dan Larios indicated that Mr. McDonald was the most qualified person for the position.

3. Evidence as to Ms. Brown

a. defendant's evidence
As to Ms. Brown, defendant argued the following facts established her administrative complaint filed with the Department of Fair Employment and Housing was untimely. Ms. Brown's administrative complaint sets forth two alleged acts of unlawful discrimination. First, on December 7, 1999, defendant did not grant Ms. Brown an interview for the Database Administrator position. Second, in January 2001, she was not selected for the Database Administrator position. (As will be noted, it is this January 2001 failure to hire Ms. Brown as a Database Administrator that gives rise to a triable issue concerning the timeliness of the filing of her administrative complaint with the Department of Fair Employment and Housing.) On May 15, 2000, Ms. Brown filed a complaint with *71 the federal Equal Employment Opportunity Commission alleging unlawful discrimination because she was not interviewed for the database administrator position. On October 11, 2002, Ms. Brown filed her administrative complaint with the Department of Fair Employment and Housing. Ms. Brown's October 11, 2002 administrative complaint states: "I believe that between January 2001 and November 2001 [defendant] denied me a promotion. I was also told that I would not be promoted because of my race (Black) and sex (female) in violation of the California Fair Employment and Housing Act."

b. Ms. Brown's opposition
Ms. Brown argued that her October 11, 2002 Department of Fair Employment and Housing administrative complaint was timely filed. Ms. Brown cited the following evidence: on May 15, 2000, she filed a federal Equal Employment Opportunity Commission claim alleging age discrimination between December 7 and 13, 1999, for Which she never received a right to sue letter; on October 8, 2001, she filed a written complaint to the vice chancellor requesting a discrimination investigation; in November 2001, she filed a written complaint to the California Community College Chancellor's office; on January 8, 2003, she filed an amended Department of Fair Employment and Housing administrative complaint alleging discrimination and retaliation between January 2001 and December 20, 2002; on October 24, 2002, she received a right to sue letter for the October 2002 claim; and she continued to apply for positions at the college after January 2001 but was denied interview opportunities.
Ms. Brown argued that she pursued internal proceedings beginning in October 2001 which were investigated but not concluded until January 30, 2002, and May 2003. Ms. Brown's declaration outlined instances of alleged discriminatory conduct or retaliation based on her race: she was twice denied an interview for the Database Administrator position; whenever African-American persons came into the library, where she is employed as a technical assistant, fellow employees assumed she knew them; she was forced to watch surveillance tapes of African-Americans who patronized the library and was asked whether she knew them; in 1999, she was not allowed to collect money in the library; in 1999, she was denied an interview for the Database Administrator position despite her qualifications; in January 2000, after being elected union president, she was accused of trying to have its executive board and grievance committee members consist entirely of African-Americans; in June 2000, she was again denied the chance to interview for the Database Administrator position; she was not allowed to interview for the position until January 2001 after she filed a protest; in August 2002, she was removed from the union negotiation committee; in May 2002, she was denied the position of interim Equal Employment Opportunity Commission Coordinator even though she met the qualifications; in October 2002, she was denied an opportunity to interview for the position of an interim Equal Employment Opportunity Commission; on December 17, 2002, an e-mail was sent to all employees equating her conduct with that of the "9-11 terrorists"; in late 2003 or early 2004, Caucasian employees asked to touch her hair; this was because they thought it was different than their hair; and in 2004, she was subjected to a number of racial and derogatory comments by an employee named Rochelle Dowdell and others.

4. Evidence related to Ms. Stryker

a. defendant's evidence
As for Ms. Stryker, defendant argued the section 12960, subdivision (d) statute of *72 limitations was violated because every claimed act of discrimination directed at her occurred more than one year before she filed her Department of Fair Employment and Housing administrative complaint on November 15, 2002. Ms. Stryker's November 15, 2002 Department of Fair Employment and Housing administrative complaint states, "I believe that on or about May 15, 2001 [defendant] denied me a promotion because of my race (Black) and sex (female) in violation of the California Fair Employment and Housing Act." Defendant cited to the following evidence. Ms. Stryker alleged in the second amended complaint that she was: denied tenure in September 1999; denied the sociology professorship due to events occurring in January 2001 and August 2001; and the subject of alleged discriminatory conduct in her removal from a union negotiation committee in August 2002. There was evidence defendant is a separate and distinct entity from the Antelope Valley Federation of Teachers Union. According to defendant, with the exception of Ms. Stryker's August 2002 removal from the union negotiation committee (over which it has no control), all the specific discriminatory conduct occurred more than one-year prior to the filing of her November 15, 2002 Department of Fair Employment and Housing administrative complaint.

b. Ms. Stryker's evidence
In her summary judgment opposition, Ms. Stryker argued her November 15, 2002 Department of Fair Employment and Housing administrative complaint was timely because defendant continuously refused to appoint her to a tenured position in 2001, 2002, and 2003. This occurred even though she was qualified to be a tenured professor under the 60 percent rule. In support of her continuous violation argument, she declared that she had taught more than 60 percent of a full time teaching load at Antelope Valley College for numerous semesters from 1997 through 2003. Ms. Stryker asserted that internal grievance proceedings concluded on two separate investigations in January 2002 and in May 2003.
Ms. Stryker's opposition declaration states that in 1994, defendant refused to fund a minority hiring program after she authored a grant application. Between the years 1997 and 2003, defendant refused to hire plaintiff as a full time instructor on the basis of her race even though she qualified under the 60 percent rule. In August 2002, she was removed from her union negotiating committee position. In June 2005, she applied for a full time tenured position. But a Caucasian was selected for the position.

c. defendant's reply
In reply to Ms. Stryker's opposition, defendant argued she had raised issues that were not identified in her November 15, 2002 Department of Fair Employment and Housing administrative complaint. The only issue raised in her November 15, 2002 Department of Fair Employment and Housing administrative complaint was that she was denied a promotion on May 15, 2001. The last discriminatory act listed in her second amended complaint was in August 2002. Defendant has no control over the negotiating committee because the Antelope Valley College Federation of Teachers is a separate entity. Ms. Stryker's argument she was continuously denied the full time tenure position is a contractual issue which was previously litigated in Stryker v. Antelope Valley Community College District (2002) 100 Cal.App.4th 324, 329-339, 122 Cal.Rptr.2d 489. The internal investigation was' completed on January 30, 2002, with a determination Ms. Stryker's discrimination claims were unfounded. The May 2003 investigation was *73 not conducted by defendant but by the community college chancellor's office.

5. Internal administrative review of plaintiffs' discrimination claims by defendant and the community college chancellor
Dr. Jackie Fisher declared that he was appointed defendant's superintendent and president on March 25, 2004. Prior to his March 25, 2004 appointment, Dr. Fisher was employed as defendant's assistant superintendent and vice president. Dr. Fisher is African-American.
In November 2001, Dr. Fisher learned that Mr. McDonald, Ms. Stryker, and Ms. Brown had filed complaints with the community college chancellor's office alleging racial discrimination. There was evidence Ms. Brown's internal discrimination complaint was filed as early as October 8, 2001. This is the date appearing on an addendum to Ms. Brown's internal discrimination complaint filed originally with the chancellor's office. Defendant hired Norman A. Traub & Associates to conduct an investigation into plaintiffs' allegations. On or about January 30, 2002, Dr. Fisher received a copy of the Traub firm investigative report. The Traub firm's report concluded that plaintiffs' discrimination allegations were unsubstantiated.
After Dr. Fisher received the report, Interim Vice President of Human Resources William Schmidt informed plaintiffs that each of the discrimination complaints had been found to be unsubstantiated. On February 14, 2002, Mr. McDonald, Ms. Stryker, and Ms. Brown appealed the Traub firm's findings to defendant's board of trustees. Defendant's board of trustees affirmed the findings of the investigation.
In November 2002, plaintiffs appealed to the chancellor's office the Traub firm investigation findings which had been sustained by defendant's board of trustees. The chancellor's office retained Trudy Largent, an African-American female, to conduct an impartial fact-finding investigation. Ms. Largent interviewed Dr. Fisher and others about the discrimination allegations. In May 2003, the chancellor's office informed Dr. Fisher that its investigation was completed and plaintiffs' discrimination allegations were unsubstantiated.

F. The Ruling
The trial court ruled that plaintiffs' administrative complaints were not timely filed with the Department of Fair Employment and Housing. The trial court ruled plaintiffs' administrative complaints involved discrete permanent discriminatory actions occurring on specific dates. Therefore, there was no continuing course of conduct. Plaintiffs filed timely appeals from the judgments entered in favor of defendant.

III. DISCUSSION

A. The Standard Of Review
In Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 850-851, 107 Cal.Rptr.2d 841, 24 P.3d 493, our Supreme Court described a party's burdens on summary judgment or adjudication motions as follows: "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon. [Citation.] There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.... [¶] [T]he party moving for summary judgment bears an initial burden *74 of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact.... A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.]" (Fns. omitted, see Kids' Universe v. In2Labs (2002) 95 Cal.App.4th 870, 877-878, 116 Cal.Rptr.2d 158.) We review the trial court's decision to grant the summary judgment motion de novo. (Johnson v. City of Loma Linda (2000) 24 Cal.4th 61, 65, 67-68, 99 Cal.Rptr.2d 316, 5 P.3d 874; Sharon P. v. Arman, Ltd. (1999) 21 Cal.4th 1181, 1188, 91 Cal.Rptr.2d 35, 989 P.2d 121, disapproved on another point in Aguilar v. Atlantic Richfield Co., supra, 25 Cal.4th at p. 853, fn. 19, 107 Cal.Rptr.2d 841, 24 P.3d 493.) The trial court's stated reasons for granting summary judgment are not binding on us because we review its ruling not its rationale. (Continental Ins. Co. v. Columbus Line, Inc. (2003) 107 Cal.App.4th 1190, 1196, 133 Cal.Rptr.2d 199; Dictor v. David & Simon, Inc. (2003) 106 Cal.App.4th 238, 245, 130 Cal.Rptr.2d 588.) In addition, a summary judgment motion is directed to the issues framed by the pleadings. (Turner v. Anheuser-Busch, Inc. (1994) 7 Cal.4th 1238, 1252, 32 Cal.Rptr.2d 223, 876 P.2d 1022; Ann M. v. Pacific Plaza Shopping Center (1993) 6 Cal.4th 666, 673, 25 Cal.Rptr.2d 137, 863 P.2d 207.) Those are the only issues a motion for summary judgment must address. (Ibid.; Goehring v. Chapman University (2004) 121 Cal.App.4th 353, 364, 17 Cal.Rptr.3d 39.)

B. Law Pertinent To Department of Fair Employment and Housing Administrative Complaints
An employee is required to file an administrative complaint with the Department of Fair Employment and Housing within one year of the occurrence of the alleged unlawful discriminatory practice. (§ 12960, subd. (d); Romano v. Rockwell Internal, Inc. (1996) 14 Cal.4th 479, 492, 59 Cal.Rptr.2d 20, 926 P.2d 1114; Cucuzza v. City of Santa Clara (2002) 104 Cal.App.4th 1031, 1040, 128 Cal.Rptr.2d 660.) Under California law, an employee is required to exhaust the administrative remedy of filing an administrative complaint with the Department of Fair Employment and Housing and to obtain a right to sue letter prior to bringing suit under the Fair Employment and Housing Act. (§§ 12960, 12965, subd. (b); Romano v. Rockwell Intermit., Inc., supra, 14 Cal.4th at p. 492, 59 Cal.Rptr.2d 20, 926 P.2d 1114; Rojo v. Kliger (1990) 52 Cal.3d 65, 88, 276 Cal.Rptr. 130, 801 P.2d 373; Martin v. Lockheed Missiles & Space Co. (1994) 29 Cal.App.4th 1718, 1724, 35 Cal. Rptr.2d 181.) Filing the administrative complaint within the applicable time limits and obtaining a right to sue letter are jurisdictional prerequisites to maintaining a civil action. (Okoli v, Lockheed Technical Operations Co. (1995) 36 Cal.App.4th 1607, 1613, 43 Cal.Rptr.2d 57; accord Blum v. Superior Court (2006) 141 Cal. App.4th 418, 422, 45 Cal.Rptr.3d 902.)
The administrative complaint must set forth the "particulars" of the alleged discrimination. (§ 12960, subd. (b); Martin v. Lockheed Missiles & Space Co., supra, 29 Cal.App.4th at p. 1724, 35 Cal. Rptr.2d 181 ["To exhaust his or her administrative remedies as to a particular act made unlawful by the Fair Employment and Housing Act, the claimant must specify that act in the administrative complaint, even if the complaint does specify other cognizable wrongful acts"]; Yurick v. Superior Court (1989) 209 Cal.App.3d 1116, *75 1121, 257 Cal.Rptr. 665.) The administrative complaint must specifically identify the unlawful conduct. (Hobson v. Raychem Corp. (1999) 73 Cal.App.4th 614, 631, 86 Cal.Rptr.2d 497 disapproved on another point in Colmenares v. Braemar Country Club, Inc. (2003) 29 Cal.4th 1019, 1031, fn. 6, 130 Cal.Rptr.2d 662, 63 P.3d 220; Chin, Cal. Practice Guide: Employment Litigation (The Rutter Group 2006) 117:1034, p. 7-149 (rev.# 1, 2006).) The section 12960, subdivision (d) administrative statute of limitations must be liberally construed to promote the resolution of "potentially meritorious claims" on their merits. (Richards v. CH2M Hill, Inc. (2001) 26 Cal.4th 798, 819, 111 Cal.Rptr.2d 87, 29 P.3d 175; Romano v. Rockwell Intern., Inc., supra, 14 Cal.4th at p. 494, 59 Cal.Rptr.2d 20, 926 P.2d 1114.) While discussing the timeliness of filing of an administrative complaint with the Department of Fair Employment and Housing, our Supreme Court has liberally construed the section 12960, subdivision (d) statute of limitations. (See Yanowitz v. L'Oreal USA Inc. (2005) 36 Cal.4th 1028, 1058, 32 Cal.Rptr.3d 436, 116 P.3d 1123.) A plaintiff may pursue claims in court which are not mentioned in the Department of Fair Employment and Housing administrative complaint if they would have been uncovered in an investigation. (Okoli v. Lockheed Technical Operations Co., supra, 36 Cal.App.4th at pp. 1613-1614, 43 Cal.Rptr.2d 57; Baker v. Children's Hospital Medical Center (1989) 209 Cal.App.3d 1057, 1065, 257 Cal.Rptr. 768.)

C. Mr. McDonald
As noted, Mr. McDonald's December 20, 2002 Department of Fair Employment and Housing administrative complaint alleged: "I believe that between July 2002 and present (December 20, 2002) [defendant] denied me a promotion to be Director of [Extended Opportunity Program Services] and [has] retaliated against me because of my race (Black) and sex (male) and in retaliation for complaining against discrimination in violation of the California Fair Employment and Housing Act." Thus, Mr. McDonald's December 20, 2002 Department of Fair Employment and Housing administrative complaint alleges he was denied a promotion between July and December 20, 2002 and defendant retaliated against him for complaining about discriminatory practices. The alleged retaliation occurred within one year of the filing of the administrative complaint on December 20, 2002.
The parties present contentions concerning the alleged failure to hire or promote Mr. McDonald. We need not discuss these contentions. Even if Mr. McDonald was not denied a promotion in October 2002, his December 20, 2002 Department of Fair Employment and Housing Act administrative complaint and the second amended complaint contain a retaliation charge. The administrative complaint retaliation charge specifies the retaliatory conduct occurred between July and December 20, 2002. The second amended complaint contains allegations of discrimination in promotion and retaliation against African-Americans for 70 years continuing to the present. As to Mr. McDonald, the second amended complaint alleges that defendant has discriminated or retaliated against him since 1984 through December 17, 2002 by: in 1984 filing false criminal charges of misappropriation of funds; in 2000, by removing him from a Selection Committee; in 2000, denying him a promotion as Dean of Counseling; in 2000 denying him the position of Extended Opportunity Program Service Director; in 2001, retaliating against him by giving him an unwarranted written reprimand; and in December 17, 2002, retaliating against him by failing to properly investigate *76 a derogatory e-mail sent by one of defendant's employees. In his summary judgment opposition, Mr. McDonald's declaration reiterated the dates and times alleged in the second amended complaint. Mr. McDonald also explained he had been a long time victim of defendant's discriminatory practices. The purported December 17, 2002 act of retaliation was inside the one-year section 12960, subdivision (d) .administrative statute of limitations. (Romano v. Rockwell Internal., Inc., supra, 14 Cal.4th at p. 492, 59 Cal.Rptr.2d 20, 926 P.2d 1114; Cucuzza v. City of Santa Clara, supra, 104 Cal. App.4th at p. 1040, 128 Cal.Rptr.2d 660.) Thus, summary judgment should not have been entered on Mr. McDonald's claims on section 12960, subdivision (d) grounds. We need not discuss the parties' remaining contentions as they relate to Mr. McDonald.

D. Ms. Brown
As noted, Ms. Brown's Department of Fair Employment and Housing administrative complaint, filed October 11, 2002 states: "I believe that between January 2001 and November 2001 [defendant]'denied me a promotion. I was also told that I would not be promoted because of my race (Black) and sex (female) in violation of the California Fair Employment and Housing Act." As noted, the allegations in the second amended complaint concerning Ms. Brown are: in 1999, she was not interviewed for the Database Administrator position; the collective bargaining agreement required she be interviewed for that position; in 2000, the Database Administrator was asked to resign because of poor performance; initially, Ms. Brown once again was not interviewed for the Database Administrator position; but then defendant was ordered to interview Ms. Brown; the interview that was conducted was a sham; the 2000 refusal to interview Ms. Brown was in retaliation for her filing an administrative complaint with the federal Equal Economic Opportunity Commission that same year; Ms. Brown unsuccessfully engaged in informal efforts to resolve her complaints until spring of 2002; the December 17, 2002 e-mail was sent in retaliation for Ms. Brown's complaints about racial discrimination; defendant failed to take immediate corrective action after the December 17, 2002 e-mail was sent; and the foregoing was part of an overall failure to take appropriate action to deal with underlying issues of discrimination.
Ms. Brown's Department of Fair Employment and Housing administrative complaint alleges that she was denied a promotion in November 2001. But, there is no allegation in the second amended complaint as to a denial of a November 2001 promotion. Moreover, Ms. Brown presented no evidence in opposition to the summary judgment that she was denied a promotion in November 2001. Rather, the second amended complaint alleged that defendant discriminated against Ms. Brown on December 7, 1999 (when she was not given an interview) and in January 2001 (when she was not selected for the Database Administrator position). The December 7, 1999 incident indisputably falls outside of the scope of her October 11, 2002 Department Fair Employment and Housing administrative complaint. There are no allegations or any evidence establishing that defendant did anything after October 11, 2001 which constituted actionable conduct. Thus, there was no actionable conduct within one year of the October 11, 2002 filing date of Ms. Brown's Department of Fair Employment and Housing administrative complaint.
However, utilizing established equitable tolling principles, Ms. Brown contends her administrative complaint must be *77 deemed timely filed. Ms. Brown argues the one-year section 12960, subdivision (d) statute of limitations was equitably tolled while she pursued her internal complaint remedies pursuant to California Code of Regulations, title 5, section 59300 et seq. Section 11135, subdivision (a)[2] prohibits discrimination based on race by any agency which receives state financial support. California Code of Regulations, title 5, section 59300 et seq. was adopted to implement the antidiscrimination provisions of section 11135 and eliminate unlawful discrimination from the community colleges. (Cal.Code Regs., tit. 5, § 59304.) Community college districts are required to adopt written policies which permit for investigation of discrimination, complaints. (Cal.Code Regs., tit. 5, § 59322.)
The California Code of Regulations provides for the filing of formal complaints with the community college chancellor. (Cal.Code Regs., tit. 5, § 59328, subd. (b).) In employment cases, the written complaint must be filed with the community college chancellor or with a designated district official within 180 days of the alleged discrimination. (Cal.Code Regs., tit. 5, § 59328, subd. (e).) If filed with the chancellor's office, the written complaint is to be immediately forwarded to the responsible local district officer. (Cal.Code Regs., tit. 5, § 59329.) If a written complaint is filed with the district, a copy must be forwarded to the chancellor's office. (Cal.Code Regs., tit. 5, § 59330.) In an employment discrimination case, the chancellor is obligated to advise the aggrieved employee that he or she has the right to file an administrative complaint with the Department of Fair Employment and Housing. (Cal.Code Regs., tit. 5, § 59329.)
Upon receipt of a written complaint that has been forwarded by the chancellor's office, the district is obligated to "commence an impartial fact-finding investigation" and prepare a written report. The written report must: describe the circumstances which occasioned the filing of the complaint; summarize "the testimony" of all witnesses; analyze any relevant data collected during the investigation; and make a finding as to whether there is probable cause to believe discrimination occurred. (Cal.Code Regs., tit. 5, § 59334.) Within 90 days of receiving the complaint, the district is to complete the investigation and forward its report and conclusions concerning the allegations to the chancellor. (Cal.Code Regs., tit. 5, § 59336.) If the employee is dissatisfied with the results of the administrative determination, a written appeal may be taken to the district's governing board which must issue a final decision within the 45 days. (Cal.Code Regs., tit. 5, § 59338, subd. (a).) The district must forward its report to the chancellor. (Cal.Code Regs., tit. 5, § 59340.)
If the case does not involve employment discrimination, the employee has the right to file a written appeal with the chancellor. The written appeal must be filed within 30 days of the date the governing board's decision becomes final. (Cal.Code Regs., tit. 5, § 59339, subd. (a).) The chancellor then reviews the written matters submitted and determines whether there is reasonable cause to believe the district violate its duties in conducting its investigation. (Cal.Code Regs., tit. 5, § 59350, subd. (a).) *78 The chancellor's duties are set forth in California Code of Regulations, title 5, section 59352, "If the Chancellor finds there is reasonable cause to believe a violation has occurred, the Chancellor shall investigate to determine whether there is probable cause to believe a violation has occurred." During an investigation, the chancellor is obligated to attempt to resolve the alleged complaint. (Cal.Code Regs., tit. 5, § 59354.) Within 120 days of commencing the investigation, the chancellor must determine whether there is probable cause to believe there has been a violation of the administrative provisions for conducting internal investigations of discrimination claims. (Cal.Code Regs., tit. 5, § 59356.) If the district does not acquiesce in a finding it has violated the administrative provisions for conducting internal investigations of discrimination claims, the chancellor is to initiate a hearing pursuant to the Administrative Procedure Act. (§ 11500 et seq.; `Cal.Code Regs., tit. 5, § 59358.) Ultimately, the chancellor has the power to "use any means authorized by law to effect compliance" including reducing funding in the face of a violation by a district. (Cal.Code Regs., tit. 5, § 59360; see Seligsohn v. Day (2004) 121 Cal. App.4th 518, 530-531, 16 Cal.Rptr.3d 909.)
The Supreme Court explained the equitable tolling rule thusly: "[I]n Elkins v. Derby (1974) 12 Cal.3d 410, 115 Cal.Rptr. 641, 525 P.2d 81, we unanimously held that the statute of limitations on a personal injury action is tolled while plaintiff asserts a workers' compensation remedy against defendant. In such a case, we noted, defendant can claim no substantial prejudice, having received timely notice of possible tort liability upon filing of the compensation claim, and having ample opportunity to gather defense evidence in the event a court action ultimately is filed. We also noted the long settled rule that whenever exhaustion of administrative remedies is a prerequisite to a civil action the running of the limitations period is suspended during the administrative proceedings (Dillon v. Board of Pension Commrs. (1941) 18 Cal.2d 427,116 P.2d 37) and we stated that `regardless of whether the exhaustion of one remedy is a prerequisite to the pursuit of another, if the defendant is not prejudiced thereby, the running of the limitations period is tolled "[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one." [Citations.]' (Elkins v. Derby, supra, at p. 414, 115 Cal.Rptr. 641, 525 P.2d 81; see also Mize v. Reserve Life Ins. Co. (1975) 48 Cal.App.3d 487, 492-494, 121 Cal.Rptr. 848.)" (Addison v. State of California (1978) 21 Cal.3d 313, 318,146 Cal.Rptr. 224, 578 P.2d 941.)
In Lantzy v. Centex Homes (2003) 31 Cal.4th 363, 370, 2 Cal.Rptr.3d 655, 73 P.3d 517, our Supreme Court delineated the scope of the equitable tolling rule and gave the following examples: "This court has applied equitable tolling in carefully considered situations to prevent, the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice. (E.g., Lambert v. Commonwealth Land Title Ins. Co. (1991) 53 Cal.3d 1072, 1080, 282 Cal.Rptr. 445, 811 P.2d 737 [claim against title insurer accrues upon insurer's refusal to defend title, but two-year limitations period is equitably tolled until underlying title action is resolved]; Prudential-LMI Com. Insurance v. Superior Court (1990) 51 Cal.3d 674, 687-693, 274 Cal.Rptr. 387, 798 P.2d 1230 [one-year period to sue on casualty insurance policy begins upon `inception of the loss,' but is equitably tolled from timely notice of loss until insurer denies claim]; Addison, supra, at pp. 317-321, 146 Cal.Rptr. 224, 578 P.2d 941 [six-month period for state court suit against public agency was equitably tolled during plaintiffs' timely federal suit *79 raising both federal and state claims]; Elkins v. Derby [, supra,] 12 Cal.3d [at pp.] 414-20, 115 Cal.Rptr. 641, 525 P.2d 81 [one-year period for personal injury action was tolled while plaintiff, acting in good faith, pursued worker's compensation remedy against defendant]; Bollinger [v. National Fire Ins. Co. (1944) 25 Cal.2d 399,] 410-412 [154 P.2d 399] [15-month period to sue on fire insurance policy was tolled while timely prior action, erroneously dismissed as premature, was pending].)" Our Supreme Court has held, "[T]he effect of equitable tolling is that the limitations period stops running during the tolling event, and begins to run again only when the tolling event has concluded." (Lantzy v. Centex Homes, supra, 31 Cal.4th at p. 370, 2 Cal.Rptr.3d 655, 73 P.3d 517, orig. italics; see Balloon v. Superior Court (1995) 39 Cal.App.4th 1116, 1122, 46 Cal. Rptr.2d 161.)
The Court of Appeal described the relevant constraints of the equitable tolling doctrine in Downs v. Department of Water & Power (1997) 58 Cal.App.4th 1093, 1100, 68 Cal.Rptr.2d 590 as follows: "Three factors determine whether the statute of limitations is equitably tolled in a particular case: (1) timely notice to defendants in filing the first claim; (2) lack of prejudice to defendants in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by plaintiffs in filing the second claim. (Collier v. City of Pasadena [(1983)] 142 Cal. App.3d [917,] 924, 191 Cal.Rptr. 681; Addison v. State of California [, supra,] 21 Cal.3d [at p.] 319, 146 Cal.Rptr. 224, 578 P.2d 941.) `The timely notice requirement essentially means that the first claim must have been filed within the statutory period. Furthermore[,] the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim. Generally this means that the defendant in the first claim is the same one being sued in the second.' (Collier v. City of Pasadena, supra, 142 Cal.App.3d at p. 924, 191 Cal.Rptr. 681.) `The second prerequisite essentially translates to a requirement that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second.' (Id. at p. 925, 191 Cal.Rptr. 681.)"
Equitable tolling principles, albeit materially more circumscribed than those applicable under state law, apply to the filing of an administrative complaint with the federal Equal Opportunity Employment Commission. (Zipes v. Trans World Airlines, Inc. (1982) 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234; see National R.R. Passenger Corp. v. Morgan (2002) 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106.) More to the point, under California law, a claimant's resort to one administrative remedy can equitably toll the time to pursue another. (Barth v. Board of Pension Commissioners (1983) 145 Cal.App.3d 826, 832-833, 193 Cal.Rptr. 755 [time to file an application for service connected disability equitably tolled by workers' compensation proceedings]; Collier v. City of Pasadena, supra, 142 Cal. App.3d at pp. 926-935, 191 Cal.Rptr. 681 [time to file disability claim with city tolled by worker's compensation proceedings]; Baillargeon v. Department of Water & Power (1977) 69 Cal.App.3d 670, 683-684, 138 Cal.Rptr. 338 [worker's compensation proceeding tolled time to file administrative claim for pension benefits]; Anderson v. City of Los Angeles (1973) 30 Cal.App.3d 219, 225-227, 106 Cal.Rptr. 299 [challenge to legality of termination before city's board of civil service commissioners tolled time to seek disability retirements form retirement board of administration].)
*80 Defendant argues that that traditional equitable tolling principles do not apply to the section 12960, subdivision (d) one-year statute of limitations to file an administrative complaint with the Department of Fair Employment and Housing. The following is the basis of defendant's position. Section 12960, subdivision (d) states in its entirety: "(d) No complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred, except that this period may be extended as follows: [¶] (1) For a period of time not to exceed 90 days following the expiration of that year, if a person allegedly aggrieved by an unlawful practice first obtained knowledge of the facts of the alleged unlawful practice after the expiration of one year from the date of their occurrence. [¶] (2) For a period of time not to exceed one year following a rebutted presumption of the identity of the person's employer under Section 12928, in order to allow a person allegedly aggrieved by an unlawful practice to make a substitute identification of the actual employer. [¶] (3) For a period of time, not to exceed one year from the date the person aggrieved by an alleged violation of Section 51.7 of the Civil Code becomes aware of the identity of a person liable for the alleged violation, but in no case exceeding three years from the date of the alleged violation if during that period the aggrieved person is unaware of the identity of any person liable for the alleged violation. [¶] (4) For a period of time not to exceed one year from the date that a person allegedly aggrieved by an unlawful practice attains the age of majority." As can be noted, section 12960, subdivision (d) expressly states that "[n]o complaint may be filed after the expiration of one year" after the unlawful practice occurred but that the limitations period may be extended in the case of the four instances set forth in subsections (1) through (4).
In Lantzy v. Centex Homes, supra, 31 Cal.4th at page 371, 2 Cal.Rptr.3d 655, 73 P.3d 517, our Supreme Court identified three circumstances where equitable tolling will be unavailable to a tardy plaintiff: first, when the Legislature has stated an intention to preclude equitable tolling except under specified circumstances; second, if equitable tolling would be inconsistent with the text of the statute of limitations; or third, where the effect of a important public interest or policy expressed by the limitations statute outweighs the injustice to the plaintiff resulting from the bar of the claim. In Lantzy, a case involving the 10-year statute of limitations in Code of Civil Procedure section 337.15[3], our Supreme *81 Court held that equitable tolling was unavailable to toll latent construction defect claims while "promises or attempts to repair" were ongoing. (Id. at pp. 367, 383, 2 Cal.Rptr.3d 655, 73 P.3d 517.) The court identified two pertinent aspects in the statutory language. Initially, the court noted that the language of Code of Civil Procedure section 337.15, subdivision (a) which stated that "[n]o action may be brought ..." suggests that the 10-year period of limitation was only subject to extension for the reasons enumerated in the statute. (Id. at p. 373, 2 Cal.Rptr.3d 655, 73 P.3d 517.) A second relevant aspect of the statutory language was that Code of Civil Procedure section 337.15 has several express exceptions to its application thus raising the argument of the application of the maxim inclusio unius est exclusio alterius. (Ibid.) Further, the court noted that there was a clearly expressed "general legislative concern about the economic effects of indefinite `long tail' defect liability" on the construction industry. (Id. at pp. 374-378, 2 Cal.Rptr.3d 655, 73 P.3d 517.) Under these circumstances, the court concluded to permit equitable tolling of the 10-year statute of limitations would undermine this statutory purpose.
There is much to be said for the argument Lantzy is controlling. But we conclude Lantzy is materially distinguishable and not controlling for the following six reasons. First, the one-year section 12960, subdivision (d) statute of limitations contains no express language stating that no tolling is to occur except under specified circumstances. Thus, section 12960, subdivision (d) is different from statutes of limitations like Code of Civil Procedure section 340.6[4] and 366.2[5] which contain *82 language stating no tolling is to occur except as indicated. (See Lantzy v. Centex Homes, supra, 31 Cal.4th at p. 371, 2 Cal.Rptr.3d 655, 73 P.3d 517 citing Laird v. Blacker (1992) 2 Cal.4th 606, 618, 7 Cal.Rptr.2d 550, 828 P.2d 691 [no tolling of legal malpractice claim "[e]xcept as specified"] and Battuello v. Battuello (1998) 64 Cal.App.4th 842, 847, 75 Cal.Rptr.2d 548 ["section 366.2 clearly states that the one-year statute of limitations ... may not be `tolled' or `extended ...'"].) This certainly does not end the issue because Code of Civil Procedure section 337.15 contains no express "no tolling" language.
Second, there is nothing in the legislative history of section 12960, subdivision (d) that indicates the Legislature intended to prevent equitable tolling from applying to the one-year statute of limitations. The one year statute of limitations in section 12960, subdivision (d) was originally adopted as part of the California Fair Employment Practice Act. (Stats.1959, ch. 121, § 1, p. 1999.) Former Labor Code section 1422 stated, "No complaint may be filed after the expiration of one year from the date of the upon which the alleged unlawful employment practice or refusal to cooperate occurred; except that this period may be extended for not to exceed 90 days following the expiration of that year, if a person allegedly aggrieved by an unlawful practice first obtained knowledge of the facts of the alleged unlawful employment practice after the expiration of one year from the date of their occurrence." (Stats. 1959, ch. 121, § 1, p. 2003.) In 1988, the administrative statute of limitations was moved to Labor Code section 1421 but the language remained unchanged. (Stats. 1977, ch. 1188, § 25, p. 3909.) In 1980, the same language as adopted in 1977 as former Labor Code section 1422 was recodified as part of section 12960. (Stats.1980, ch. 992, § 3, p. 3155.) Later, the exceptions to the one year statute of limitations were expanded to include: the extension for discovery of an employer's identity (Stats 1999, ch. 797, § 2) the extension for the discovery of the identity of a perpetrator of workplace violence or intimidation within the meaning of Civil Code section 51.7 (Stats.2002, ch. 490, § 2); and attainment of the age of majority. (Stats.2005, ch. 642, § 1.) However, the "[n]o complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred except that this period may be extended" language now in section 12960, subdivision (d) has remained unchanged, since it was first adopted in 1959 a part of former Labor Code section 1422.
There is no evidence the Legislature intended in 1959 to preclude the application of equitable tolling principles to the statute of limitations for filing an administrative complaint. Only one legislative report was prepared for Assembly Bill No. 91 (1959 Reg. Sess.). The only reference to the statute of limitations to file an administrative complaint is on pages 4 and 5 of the Office of Legislative Counsel Report on Assembly Bill No. 91 (1959 Reg. Sess.) dated April 16, 1959 which states: "Permits persons claiming to be aggrieved by commission of any of the unlawful practices ... to file verified complaints with the commission ... but places a statute of limitations upon the filing of complaints of one year from the alleged act, which can be extended for 90 additional days where *83 complainant first obtains knowledge after expiration of the year." As can be noted, there is no discussion of equitable tolling. More to the point, unlike the situation in Lantzy, there is no expression of any legislative concern about the adverse economic impact of construction industry wide liability for decades old latent defect claims. No similar concerns are present in this case in connection with the legislation.
Moreover, nothing in any legislative committee report or other documents prepared for the 1999[6], 2002[7], and 2005[8] amendments to section 12960, subdivision (b) reflect an intention that equitable tolling principles are inapplicable to the filing of a Department of Fair Housing and Employment administrative complaint.
Third, it bears emphasis that Lantzy involved a lengthy 10-year statute of limitations. The Supreme Court explained: "[T]he purpose of section 337.15, as revealed by its history, weighs against a judicially imposed rule that the 10-year *84 limitations period set forth in this statute is tolled for repairs. On the other hand, countervailing policies of practicality and fairness do not compel such a rule. If the defendant's acts or promises occurred well before expiration of the 10-year limit, an extension at the end of the limitations period is unnecessary to protect the plaintiffs rights. And because the limitations period provided by section 337.15 is so `exceptionally long' (Aas [v. Superior Court (2000)] 24 Cal.4th 627, 653, 101 Cal.Rptr.2d 718, 12 P.3d 1125), it indicates the Legislature's effort to provide, within the strict statutory period itself, a reasonable time to discover, adjust, and, if necessary, sue upon latent defects. Given the particular considerations that led the Legislature in 1971 to seek a generous but firm cutoff date for construction defect lawsuits, further extension of the period by judicial fiat is not warranted." (Lantzy v. Centex Homes, supra, 31 Cal.4th at pp. 378-379, 2 Cal. Rptr.3d 655, 73 P.3d 517, fn. omitted; orig. italics.) Our Supreme Court then contrasted the 10-year statute of limitations in Code of Civil Procedure section 337.15, subdivision (a) with shorter limitation periods, where equitable tolling applied, such as: the 2 years to sue a title insurer discussed in Lambert v. Commonwealth Land Title Ins. (1991) 53 Cal.3d 1072, 1077, 282 Cal.Rptr. 445, 811 P.2d 737; the 1-year from inception of loss limitation period in a suit against an insurer as discussed in Prudential-LMI Com. Insurance v. Superior Court (1990) 51 Cal.3d 674, 687, 693, 274 Cal.Rptr. 387, 798 P.2d 1230; the 6-month limitations period evaluated in Addison v. State of California, supra, 21 Cal.3d at pages 317-319, 146 Cal.Rptr. 224, 578 P.2d 941; the former one-year personal injury statute of limitations in Elkins v. Derby, supra, 12 Cal.3d at pages 414-420, 115 Cal.Rptr. 641, 525 P.2d 81 where the plaintiff deferred filing suit until one month after a workers compensation referee's decision became final; and a 15-month limitation period under an insurance policy explained in Bollinger v. National Fire Ins. Co., supra, 25 Cal.2d at pages 402-411, 154 P.2d 399. (Lantzy v. Centex Homes, supra, 31 Cal.4th at pp. 379-380, 2 Cal.Rptr.3d 655, 73 P.3d 517.)
Our Supreme Court then held: "No Similar issues are presented here. Because plaintiffs had three or four years after discovery, and up to ten years after the project's completion, to bring their suits for latent construction defects, many of the concerns that might warrant equitable tolling are ameliorated. Indeed, were we to conclude that the generous limitations period of section 337.15 is equitably tolled for repairs, despite the absence of any specific indication that the 1971 Legislature so intended, the implication would arise that all statutes of limitations are similarly tolled or suspended in progress while the parties make sincere efforts to adjust their differences short of litigation. We find no such general principle in California law." (Lantzy v. Centex Homes, supra, 31 Cal.4th at p. 380, 2 Cal.Rptr.3d 655, 73 P.3d 517, orig. italics.) As can be noted, this case involves the shorter one-year limitation periods and no claim is made about delayed accrual because of belated discovery. This case, with its 1-year statute of limitations, is closer to Lambert, Prudential-LMI Com. Insurance, Addison, Elkins, and Bollinger than it is to the 10-year period in Lantzy.
Fourth, equitable tolling is a firmly established judicially developed principle and was so when section 12960, subdivision (d) was enacted. In Elkins v. Derby, supra, 12 Cal.3d at page 414, 115 Cal.Rptr. 641, 525 P.2d 81, the Supreme Court explained: "It has long been settled in this and other jurisdictions that whenever the exhaustion of administrative remedies is a prerequisite to the initiation of a *85 civil action, the running of the limitations period is tolled during the time consumed by the administrative proceeding. [Citations]." (Italics added, see Elliott & Home v. Chambers Land Co. (1923) 61 Cal.App. 310, 312, 215 P. 99.) Repeals by implication of long established judicial rules are disfavored. (People v. Davenport (1985) 41 Cal.3d 247, 266, 221 Cal. Rptr. 794, 710 P.2d 861 ["[I]t should not be presumed that the legislative body intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication"]; Fuentes v. Workers' Comp. Appeals Bd. (1976) 16 Cal.3d 1, 7, 128 Cal.Rptr. 673, 547 P.2d 449 ["Repeals by implication are not favored ..."].) There is no evidence the Legislature intended to bar the use of equitable tolling principles in cases subject to section 12960, subdivision (d).
Fifth, it can be asserted that the doctrine of expressio unius est exclusio alterius precludes us from applying equitable tolling principles to this case. (See In re Lance W. (1985) 37 Cal.3d 873, 888, 210 Cal.Rptr. 631, 694 P.2d 744 ["`Under the familiar rule of construction, expressio unius est exclusio alterius, where exceptions to a general rule are specified by statute, other exceptions are not to implied or presumed'"]; Wildlife Alive v. Chickering (1976) 18 Cal.3d 190, 195, 132 Cal.Rptr. 377, 553 P.2d 537 [same].) Under this analysis, since equitable tolling is not mentioned in section 12960, subdivision (d)(1) though (4), it does not apply to this case. But the expressio unius est exclusio alterius maxim has many exceptions and no application: if it would contradict a discernable and contrary legislative intent; where it would contravene a well established principle of law; where there is no manifest reason why other circumstances than those enumerated should not be included and exclusion would result in an injustice; to a statute the language of which may fairly comprehend many different objects, some of which are mentioned merely by way of example, without excluding others of similar nature; or to a matter which is only incidentally dealt with in a statute. (In re J.W. (2002) 29 Cal.4th 200, 209, 126 Cal.Rptr.2d 897, 57 P.3d 363; Estate of Banerjee (1978) 21 Cal.3d 527, 540, fn. 10, 147 Cal.Rptr. 157, 580 P.2d 657.) To utilize the expressio unius est exclusio alterius principle to construe section 12960, subdivision (d) as defendant asserts, it would contravene well established principles of law  equitable tolling rules.
Sixth, even with the foregoing five considerations, this a close question; but what clinches the issue for us is the requirement that the Fair Employment Housing Act statutes of limitation be liberally construed to promote the resolution of potentially meritorious claims on their merits. (§ 12993, subd. (a); Yanowitz v. L'Oreal, USA Inc., supra, 36 Cal.4th at p. 1058, fn. 17, 32 Cal.Rptr.3d 436, 116 P.3d 1123 [continuing violation rule applied in the context of the claim appearing in the Department of Fair Employment and Housing complaint]; Romano v. Rockwell Internal., Inc., supra, 14 Cal.4th at p. 493-494, 59 Cal.Rptr.2d 20, 926 P.2d 1114;.) Without the legislatively mandated liberal construction requirement, we recognize the result may be different. Liberal construction of the section 12960, subdivision (d) one-year statute of limitations is inconsistent with an absolute bar on the application of equitable tolling rules. For these combined reasons, all of them, we conclude this case is materially different from Lantzy and equitable tolling is potentially available to a discrimination plaintiff who files an administrative complaint more than one *86 year after an act of unlawful discrimination.
Here, there is a triable issue as to whether the time to file the October 11, 2002 administrative complaint with the Department of Fair Employment and Housing was equitably tolled while Ms, Brown pursued her internal community college system remedies. The earliest date upon which the community college internal complaint process set forth in California Code of Regulations, title 5, section 59300 et seq. commenced was October 8, 2001  the date on her addendum to her community college internal complaint. The addendum explicitly refers to the failure to hire Ms. Brown as the Database Administrator through January 2001. Dr. Fisher, defendant's president, learned in November 2001 that Ms. Brown filed her internal complaint with the chancellor. Investigation and review of her internal complaint filed pursuant to California Code of Regulations, title 5, section 59300 et seq. was conducted both at the district and state levels. Defendant's board of trustees found Ms. Brown's discrimination claims to be without merit. In November 2002, Ms. Brown appealed the district's conclusions. In May 2003, Dr. Fisher was advised the chancellor's staff counsel had found Ms. Brown's discrimination claims to be without merit. Until May 2003, the administrative review process conducted pursuant to California Code of Regulations, title 5, section 59300 et seq. was in progress. Thus, there is evidence, principally in Dr. Fisher's declaration, that Ms. Brown's January 2001 failure to hire claim was subject to administrative review pursuant to California Code of Regulations, title 5, section et seq. from October 8, 2001, until May 2003. On October 11, 2002, while Ms. Brown's failure to hire claim was subject to administrative review pursuant to California Code of Regulations, title 5, section et seq., she filed her Department of Fair Employment and Housing administrative complaint. The subject of both the internal community college and Department of Fair Employment and Housing administrative complaints was the same. The only time that there was no pending administrative proceeding was between January 2001 and October 8, 2001  less than one year. Under equitable tolling principles, applicable in the case of multiple administrative proceedings, there is a triable issue as to whether the October 11, 2002 Department of Fair Employment and Housing complaint was timely filed. (Barth v. Board of Pension Commissioners, supra, 145 Cal.App.3d at pp. 832-833, 193 Cal. Rptr. 755; Collier v. City of Pasadena, supra, 142 Cal.App.3d at pp. 926-935, 191 Cal.Rptr. 681; Baillargeon v. Department of Water & Power, supra, 69 Cal.App.3d at pp. 683-684, 138 Cal.Rptr. 338; Anderson v. City of Los Angeles, supra, 30 Cal. App.3d at pp. 225-227, 106 Cal.Rptr. 299.)
Defendant argues the foregoing conclusions concerning the availability of equitable tolling are inconsistent with language appearing in Schifando v. City of Los Angeles (2003) 31 Cal.4th 1074, 1079-1092, 6 Cal.Rptr.3d 457, 79 P.3d 569. Defendant argues, "The doctrine of `equitable tolling' cannot salvage the belated filing of a [Department of Fair Housing and Employment administrative] complaint where the California Supreme Court has already held that a litigant who has pursued, but not completed, the internal remedial process is not legally obligated to `exhaust' those internal remedies as a precondition to obtaining relief under [the Fair Employment, and Housing Act]." In support of this contention, defendant relies on language appearing in Schifando. Defendant cites to the following analysis in Schifando: "The Legislature intended the FEHA's administrative system `to occupy the field of regulation of discrimination in employment *87 and housing encompassed by the provisions of [the act], exclusive of all other laws banning discrimination in employment and housing by any city, city and county, county, or other political subdivision of the state ....' (§ 12993, subd. (c).) In other words, although the FEHA does not; limit the application of other state statutes (e.g., Civ.Code, § 51.7), or constitutional provisions involving discrimination, it expressly preempts local governmental laws, regulations, and procedures that would affect the rights included in its provisions. It provides a one-year grace period for pending local enforcement proceedings. (Gov.Code, § 12960; see Rojo v. Kliger [, supra,] 52 Cal.3d [at pp.] 77-79, 276 Cal.Rptr. 130, 801 P.2d 373.)" (Schifando v. City of Los Angeles, supra, 31 Cal.4th at p. 1082, 6 Cal.Rptr.3d 457, 79 P.3d 569.) Defendant also relies on the following comment in Schifando, "This court, however, has never held that exhaustion of an internal employer procedure was required where an employee made a claim under FEHA or another statutory scheme containing its own exhaustion prerequisite." (Id. at p. 1092, 6 Cal.Rptr.3d 457, 79 P.3d 569.)
Defendant's reliance on Schifando is without merit. The Supreme Court identified the issue and its resolution in Schifando thusly: "We granted review to determine whether a city employee must exhaust both the administrative remedy that the California Fair Employment and Housing Act (Gov.Code, § 12900 et seq.) (FEHA) provides and the internal remedy that a city charter requires before filing an FEHA disability discrimination claim in superior court. We conclude the employee need not exhaust both administrative remedies, and that receiving a Department of Fair Employment and Housing (the Department) `right to sue' letter is a sufficient prerequisite to filing an FEHA claim in superior court." (Schifando v. City of Los Angeles, supra, 31 Cal.4th at pp. 1079-1080, 6 Cal.Rptr.3d 457, 79 P.3d 569; fn. omitted.) Our Supreme Court concluded its administrative remedy analysis in Schifando as follows: "We hold that municipal employees who claim they have suffered employment-related discrimination need not exhaust City Charter internal remedies prior to filing a complaint with the Department. We recognize the existence of potential procedural issues that might arise in the situation where an employee chooses to pursue both avenues of redress, but those issues are not before us." (Id. at p. 1092, 6 Cal.Rptr.3d 457, 79 P.3d 569.)
Our Supreme Court has never held that the equitable tolling doctrine is inapplicable to section 12960, subdivision (d). In Schifando, our Supreme Court addressed and resolved an entirely different issue-whether an employee of the City of Los Angeles must exhaust his administrative remedies under the city charter. The present issue, the application of well established equitable tolling principles to the section 12960, subdivision (d) statute of limitations for filing an administrative complaint with the Department of Fair Employment and Housing, was not before the Supreme Court in Schifando. Because that issue was not before our Supreme Court, Schifando is not controlling authority for the proposition before us. (Elisa B. v. Superior Court (2005) 37 Cal.4th 108, 118, 33 Cal.Rptr.3d 46, 117 P.3d 660; Nolan v. City of Anaheim (2004) 33 Cal.4th 335, 343, 14 Cal.Rptr.3d 857, 92 P.3d 350.) We need not address the parties' remaining contentions concerning Ms. Brown.

E. Ms. Stryker
As noted, Ms. Stryker's Department of Fair Employment and Housing administrative complaint filed November 15, 2002, states, "I believe that on or about *88 May 15, 2001 [defendant] denied me a promotion because of my race (Black) and sex (female) in violation of the California Fair Employment and Housing Act." Ms. Stryker filed the Department Fair Employment and Housing administrative complaint on November 15, 2002, which was well over one year after the alleged discriminatory act of failing to promote her on May 15, 2001. (§ 12960, subd. (d); Romano v. Rockwell Internal, Inc., supra, 14 Cal.4th at p. 492, 59 Cal.Rptr.2d 20, 926 P.2d 1114; Williams v. City of Belvedere (1999) 72 Cal.App.4th 84, 90, 84 Cal. Rptr.2d 658.) Ms. Stryker contends, however, that her Fair Employment and Housing administrative complaint was timely filed based on continuing violation and equitable tolling doctrines theories. We need not address these issues because Ms. Stryker never exhausted her administrative remedies. Ms. Stryker never filed an administrative claim identifying an unlawfully discriminatory act alleged in the second amended complaint.
The second amended complaint bears absolutely no relationship to the claim raised in the November 15, 2002 administrative complaint of failure to promote on May 15, 2001. None of the allegations in the second amended complaint refer to the failure to promote on May 15, 2001. The second amended complaint alleges all African-Americans over the course of 70 years experienced unlawful discrimination. Specifically, as to Ms. Stryker, the second amended complaint alleges: in 1993, she prepared a grant for funding of a program to enhance minority recruitment of tenured faculty members; at some point in time, the program closed and was operated by a Caucasian woman; sometime after 1997, she increased her teaching load from 9 units to 13 units, which was more than the 60 percent load allowable for adjunct faculty members; under California law, teaching more than 60 percent of the allowable load for 3 consecutive semesters requires that the adjunct faculty member be given a permanent position; in September 1999, defendant discovered it had more than 16 employees who were impacted by the 60 percent rule; the employees were entitled to be permanently hired; in December 1999, defendant permanently hired 13 employees; none of the permanent hires was African-American; and defendant did not hire her even though she qualified under the 60 percent rule. The second amended complaint further alleged that: in 2000, Ms. Stryker qualified for a full time position as an instructor in the Sociology Department; as part of a discriminatory practice, defendant reconstituted a selection committee composed of three African-Americans and two Caucasians to a committee of three Caucasians, one Latino, and one African-American; Ms. Stryker, the only African-American to apply, was not hired allegedly as a result of her race. A Caucasian male was hired. On August 23, 2003, Ms. Stryker was removed from the union negotiation committee in retaliation for her discrimination complaint against defendant. Ms. Stryker was also the subject of the December 17, 2002 derogatory e-mail. As noted, the administrative complaint only refers to the refusal to promote on May 15, 2001. None of the allegations in her second amended complaint are even arguably related to Ms. Stryker's November 15, 2002 Department of Fair Employment and Housing administrative complaint. Ms. Stryker failed to exhaust her administrative remedies as required by the Department of Fair Employment and Housing Act. (§ 12940, subd. (f); Rodriguez v. Airborne Express (9th Cir. 2001) 265 F.3d 890, 897-898 [applying California law]; Okoli v. Lockheed Technical Operations Co., supra, 36 Cal.App.4th at pp. 1613-1617, 43 Cal.Rptr.2d 57; Martin v. Lockheed Missiles & Space Co., supra, *89 29 Cal.App.4th at pp. 1729-1730, 35 Cal. Rptr.2d 181.) Defendant's summary judgment motion was properly granted as to Ms. Stryker.

IV. DISPOSITION
The judgments against plaintiffs, John McDonald and Sylvia Brown, are reversed. They are to recover their costs incurred on appeal from defendant, Antelope Valley College District. The judgment against plaintiff, Sallie Stryker, is affirmed. Defendant is to recover its costs on appeal from Ms. Stryker.
We concur: ARMSTRONG and KRIEGLER, JJ.
NOTES
[1] Unless otherwise noted, all future statutory references are to the Government Code.
[2] Section 11135, subdivision (a) states in part, "No person in the State of California shall, on the basis of race, national origin, ethnic group identification, religion, age, sex, sexual orientation, color, or disability, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."
[3] Code of Civil Procedure section 337.15 states in its entirety: "(a) No action may be brought to recover damages from any person, or the surety of a person, who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for any of the following: [¶] (1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property. [¶] (2) Injury to property, real or personal, arising out of any such latent deficiency. [¶] (b) As used in this section, `latent deficiency' means a deficiency which is not apparent by reasonable inspection. [¶] (c) As used in this section, `action' includes an action for indemnity brought against a person arising out of that person's performance or furnishing of services or materials referred to in this section, except that a cross-complaint for indemnity may be filed pursuant to subdivision (b) of Section 428.10 in an action which has been brought within the time period set forth in subdivision (a) of this section. [¶] (d) Nothing in this section shall be construed as extending the period prescribed by the laws of this state for bringing any action. [¶] (e) The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement, at the time any deficiency in the improvement constitutes the proximate cause for which it is proposed to bring an action. [¶] (f) This section shall not apply to actions based on willful misconduct or fraudulent concealment. [¶] (g) The 10-year period specified in subdivision (a) shall commence upon substantial completion of the improvement, but not later than the date of one of the following, whichever first occurs: [¶] (1) The date of final inspection by the applicable public agency. [¶] (2) The date of recordation of a valid notice of completion. [¶] (3) The date of use or occupation of the improvement. [¶] (4) One year after termination or cessation of work on the improvement, [¶] The date of substantial completion shall relate specifically to the performance or furnishing design, specifications, surveying, planning, supervision, testing, observation of construction or construction services by each profession or trade rendering services to the improvement."
[4] Code of Civil Procedure section 340.6 states in part: "In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury; [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred; [¶] (3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation; and [¶] (4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action." (Italics added.)
[5] Code of Civil Procedure section 366.2, states: "(a) If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply. [¶] (b) The limitations period provided in this section for commencement of an action shall not be tolled or extended for any reason except as provided in any of the following, where applicable: [¶] (1) Sections 12, 12a, and 12b of this code, [¶] (2) Part 4 (commencing with Section 9000) of Division 7 of the Probate Code (creditor claims in administration of estates of decedents). [¶] (3) Part 8 (commencing with Section 19000) of Division 9 of the Probate Code (payment of claims, debts, and expenses from revocable trust of deceased settlor). [¶] (4) Part 3 (commencing with Section 21300) of Division 11 of the Probate Code (no contest clauses)." (Italics added.)
[6] We have reviewed the following reports prepared in connection with the 1999 amendment to section 12960, subdivision (d); none of which discuss equitable tolling. (See Legis. Counsel's Dig., Sen. Bill No. 211 (1999-2000 Reg. Sess.); Sen. Com. on Industrial Relations, Rep. on Sen. Bill No. 211 (1999-2000 Reg. Sess.) as introduced Jan. 20, 1999, prepared for Feb. 24, 1999 hearing; Sen. Com. on Industrial. Relations, Rep. on Sen. Bill No. 211 (1999-2000 Reg. Sess.) as amended Feb. 24, 1999, prepared for Mar. 24, 1999; Summary prepared for Assem. Com. on Appropriations on Sen. Bill No. 211 (1999-2000 Reg. Sess.) as amended Feb. 24, 1999, prepared for Apr. 26, 1999 hearing; Summary prepared for Assem. Com. on Appropriations on Sen. Bill No. 211 (1999-2000 Reg. Sess.) as amended Feb. 24, 1999, prepared for May 17, 1999 hearing; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill. No 211 (1999-2000 Reg. Sess.) as amended May 25, 1999; Dept. of Finance Bill Analysis of Sen. Bill No. 211 (1999-2000 Reg. Sess.) as amended Jul. 15, 1999; Sen. Rules Com., Off. of Sen. Floor Analyses, unfinished business analysis of Sen. Bill. No. 211 (1999-2000 Reg. Sess.) as amended Sep. 1, 1999; Sen. Com. on Labor and Employment, 3d reading analysis of Sen. Bill No. 211 (1999-2000 Reg. Sess.) as amended Sep. 1, 1999.)
[7] None of the following documents prepared in 2002 contain any evidence of a legislative intention to limit or abrogate the application of well established equitable tolling principles to the filing of Department of Fair Employment and Housing administrative complaints. (See Legis. Counsel's Dig., Sen. Bill No. 1945 (2001-2002 Reg. Sess.); Sen. Com. on Judiciary, Rep. on Sen. Bill No. 1945 (2001-2002 Reg. Sess.) as introduced, prepared for Apr. 16, 2002 hearing; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1945 as amended Apr. 23, 2002, May 14, 2002; Assem. Com. on Labor and Employment, Rep. on Sen. Bill No. 1945 (2001-2002 Reg. Sess.) as amended Apr. 23, 2002, prepared for Jun. 26, 2002 hearing; Sen. Com. on Labor and Employment, 3d reading analysis of Sen. Bill No. 1945 (2001-2002 Reg. Sess.) as amended Aug. 7, 2002; Assem. Com. on Appropriations Rep. on Sen. Bill No. 1945 (2001-2002 Reg. Sess.) as amended Aug. 7, 2002 prepared for Aug. 14, 2002 hearing; Sen. Rules Com., Off. of Sen. Floor Analyses, unfinished business analysis of Sen. Bill. No. 1945 (2001-2002 Reg. Sess.) as amended Aug. 7, 2002.)
[8] No documents prepared in connection with the 2005 amendment to section 12960, subdivision (d) evidence a legislative intention to modify in any way equitable tolling provisions. (See Legis. Counsel's Dig., Assem. Bill No. 1669 (2005-2006 Reg. Sess.); Assem. Com. on Labor and Employment, Rep. on Assem. Bill No. 1669 (2005-2006 Reg. Sess.) as introduced, prepared for Apr. 6, 2005 hearing; Assem. Com. on Appropriations, Rep. on Assem. Bill No. 1669 (2005-2006 Reg. Sess.) as amended Apr. 13, 2005, prepared for Apr. 20, 2005 hearing; Assem. Com. on Labor and Employment, 3d reading report on Assem. Bill No. 1669 (2005-2006 Reg. Sess.) as amended Apr. 13, 2005; Sen. Com. on Judiciary, Rep. on Assem. Bill No. 1669 (2005-2006 Reg. Sess.) as amended Apr. 13, 2005, prepared for June 28, 2005 hearing; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill. No. 1669 (2005-2006 Reg. Sess.) as amended Apr. 13, 2005.)